**NORTH AMERICAN FOREIGN TRAD-
ING CORPORATION, Plaintiff,**

v.

**ZALE CORPORATION, Defendant.**

No. 77 Civ. 1056 (RLC).

United States District Court,
S. D. New York.

April 6, 1979.
Supplemental Opinion July 16, 1979.

Cleary, Gottlieb, Steen & Hamilton, Proskauer, Rose, Goetz & Mendelsohn, New York City, for plaintiff; George Weisz, Marvin E. Frankel, Lois D. Thompson, Ann C. Diamond, New York City, of counsel.

Robinson, Perlman, Kirschner & Leffler, P. C., New York City, for defendant; Herbert Robinson, Allan J. Kirschner and Ira E. Garr, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an appeal from Magistrate Raby's ruling denying defendant's motion to disqualify plaintiff's counsel. After a full hearing the Magistrate denied the motion based on his conclusion that the matter in which plaintiff's counsel advised defendant was wholly unrelated to the instant case and that the "prior representation was not of such a nature as in any way to have compromised or prejudiced the preparation of the defense in the instant action by reason of any assumed unfair tactical advantage gained by the present attorney for the plaintiff, Cleary Gottlieb [sic] by virtue of knowledge acquired by them . . . incident to the prior representation of Zale in the Belgium matter." (Tran. 485). Since I am certain that the Magistrate's determination was proper in all respects, I concur in his disposition of this matter and dismiss the appeal.

I have read the transcript of the hearing and find the following facts. Cleary, Gottlieb, Steen & Hamilton ("Cleary, Gottlieb") has offices in New York, Brussels and in other foreign locales not relevant to our present concerns. Through its New York office it had been handling the legal affairs of North American Foreign Trading Corp. ("NAFT") for some time prior to September, 1976. In or about that month it took on the instant complaint which George Weisz, the partner-in-charge, first sought to resolve with Zale officials without litigation. In September, 1976, Marvin Zale and Eisik Bar, Zale executives, paid a visit to Cleary, Gottlieb's offices in Brussels to discuss with the senior partner there, Richard Webster, the business structure necessary for the corporate operations in Brussels. After discussion that meeting ended with no future meeting scheduled. Neither Webster in Brussels nor Weisz in New York knew of the other party's actions, and each went through the firm's regular procedure of setting up a file on a new matter.

On or about September 27, Herbert Robinson, a member of the firm representing defendant in this proceeding, advised Weisz in a telephone conversation that Cleary, Gottlieb could not represent NAFT in this proceeding against Zale because the firm, through Webster, was representing Zale in Brussels. Weisz sought to verify this. He finally made contact with Webster on September 29, and told Webster that the firm was representing NAFT in litigation against Zale in respect of a breach of contract claim involving watches and that he had been advised that Webster was also representing Zale. Webster said that he had had a meeting with Zale representatives and that there had been no indication that the matter would be pursued further and that the matter Weisz had taken on had no relationship whatsoever to what he, Webster, had been consulted about. Webster advised Weisz that in view of the firm's representation of NAFT in the suit against Zale, he would not represent the corporation in Belgium.

Weisz advised Robinson by letter dated October 2, 1976, that Cleary, Gottlieb would not represent Zale in Brussels, and until the instant motion was filed, Weisz assumed that his firm had had no further relationship with Zale regarding the matter in Bel-

gium. However, this assumption was not in accord with the true facts.

On or about October 15, 1976, Bar called Webster and Webster told him that Cleary, Gottlieb was representing a party in New York suing Zale and that this would prevent Webster from further advising Zale. Bar prevailed upon Webster not to close the door, but to postpone a decision until he talked to Marvin Zale who was expected in Brussels within the near future. The three met (Zale, Bar and Webster) on November 16, and Webster indicated that because his firm was now representing a party suing Zale, he could not advise Zale further. Zale, however, insisted that he was fully familiar with the case in New York, and that it was not at all relevant to the matter in which the corporation needed Webster's advice and assistance in Brussels. With that assurance Webster continued until the summer of 1977 his contacts with Zale representatives concerning the latter's business structure in Brussels.

That Zale representatives were seeking advice from Cleary, Gottlieb in Brussels and Cleary, Gottlieb was representing NAFT, Zale's adversary, in a breach of contract dispute in New York was known and acquiesced in by Zale's top officials from at least the time of the November 16, 1976 conversation among Zale, Bar and Webster. Defendant's counsel admit that they had this knowledge at least by May, 1978. Certainly the Zale officials who dealt with outside counsel directly in respect of this litigation—Joseph Alan Robinson, Zale's Assistant General Counsel, and David Musslewhite, its General Counsel—knew of Cleary, Gottlieb's dual role far earlier than May, 1978. It is hard for me to believe—indeed I do not believe—that Zale officials did not advise their outside counsel a long time before May, 1978 that Zale was consulting with Webster in Brussels on a matter wholly unrelated to any of the issues in the instant litigation. Marvin Zale's testimony before the Magistrate makes clear that at least up to the time of the filing of this motion, his view was that this litigation and the Belgium matter were not even remotely connected, and that he had had no problem with Webster advising him on a totally unrelated matter in Belgium while Weisz served as plaintiff's counsel in a suit against the corporation in New York.

*Discussion*

■ Under the circumstances, the motion is patently frivolous and is being pursued as one of the "tools of the litigation process, being used . . . for purely strategic purposes," *Allegaert v. Perot*, 565 F.2d 246, 251 (2d Cir. 1977) (citations omitted); *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1289 (2d Cir. 1975); *J. P. Foley & Co. v. Vanderbilt*, 523 F.2d 1357, 1360 (2d Cir. 1975) (Gurfein, J., concurring). In view of the misuse of such disqualification motions, courts must be careful "to prevent literalism from possibly overcoming substantial justice to the parties." *J. P. Foley & Co. v. Vanderbilt, supra*, 523 F.2d at 1360 (Gurfein, J., concurring). A delicate balance must be struck between a client's free choice of counsel and maintenance of the highest ethical and professional standards. *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir. 1973). The yardstick devised to strike this balance is the substantial relationship test: when a claim is made that counsel ought to be disqualified because he represented an opposing party in prior litigation, the determinative test is whether there is a substantial relationship between the issues in the cases in question. *See Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d 751, 754–56 (2d Cir. 1975).

■ More recently, in *India v. Cook Industries, Inc.*, 569 F.2d 737 (2d Cir. 1978), our circuit has said that in its practical application the substantial relationship test is met only on a showing that the issues involved in the two cases are "identical or essentially the same." *Id.* at 740 (citations omitted). The basic inquiry is whether counsel's involvement in the prior case was such that he acquired privileged information relevant to the instant representation. *Ibid.* Using that standard, it is clear that Zale's business structure in Belgium is not even remotely related to the contentions in

this case, where it is alleged that Zale wrongfully breached its contract with plaintiff by refusing to accept and purchase wristwatches allegedly made and manufactured for the defendant.

The asserted justification for seeking to disqualify counsel is based on some questions put by Weisz in the course of taking the depositions of defendant's officers in Dallas and remarks by Maurice Lowinger, NAFT president, made during the course of the latter's deposition. I am not persuaded that a generally innocuous inquiry by Weisz concerning the structure of the defendant corporation can now be transposed into concrete indication of privileged knowledge by Cleary, Gottlieb about Zale's organizational framework supposedly obtained by Webster and of relevance here. There is no merit to that contention.

Concern was also manifested about questions in respect of Zale's dealing in the unofficial diamond market, its anti-trust problems, and its problems with the Internal Revenue Service, and Securities and Exchange Commission. All these matters, however, are admittedly part of the public record—published in newspaper reports in the United States and Europe over a period of 2 years prior to 1978, or contained on Zale's Form 10K dated March 31, 1977, a proxy statement issued by Zale dated June 30, 1978, and its Form 8K dated March 31, 1977. Nor do the remarks of Lowinger evidence his being the recipient of any privileged information obtained by Webster in the course of his advising Zale about its business structure in Belgium. These remarks are probably bombast and in any event they relate to information in the public realm about Zale's troubles. There is no substance whatsoever to the motion, and it is denied.

This does not end the inquiry, however. Cleary, Gottlieb has been required to obtain outside counsel to advise it in respect of these charges, and plaintiff has been forced to retain additional counsel to represent it on this motion. The court is convinced that the motion was made and pursued solely for purposes of harassment and delay, and my reading of the record convinces me that the motion is the brainchild of defendant's outside counsel.

This case was commenced in March, 1977. In June, a pretrial conference was held and October 31, 1977, was set as the date for the completion of all discovery, with the pretrial order to be filed on January 27, 1978. On October 14, 1977, at the parties' request, the court amended the pretrial schedule, postponing completion of discovery until November 30, 1977, and submission of a pretrial order to February 27, 1978. On November 14, 1977, at a third pretrial conference, the court, again to accommodate the parties, extended the discovery cutoff date to January 31, 1978, and set May 5, 1978, as the new date for the filing of the pretrial order. The case was then referred to Magistrate Raby for oversight and disposition of all discovery and pretrial matters.

Magistrate Raby has held a series of pretrial conferences. On September 11, 1978, he requested that the discovery cutoff date be extended to November, 3, 1978. Thereafter, a further extension to January 15, 1979, was secured. January 15, 1979, has long since passed, but no pretrial order has been filed. Currently pending before Magistrate Raby is defendant's motion for summary judgment which has been held under advisement pending the outcome of this appeal. Every step in this litigation has been a contest to the death, accompanied by an avalanche of motions, memoranda and long-winded oral argument whenever permitted. Opposing counsel seem not disposed to accommodate each other, or to settle even the most insignificant dispute without resort to the court. The method employed by counsel here certainly supports the oft-expressed public view that lawyers are causing their clients needless expenses in the conduct of litigation.

No purpose has been served by the instant motion other than to harass plaintiff and his counsel and to delay these proceedings further. The time has come to call a halt, or at least to have the burden of these puerile litigation tactics fall on counsel, where it belongs, rather than on the client

or the court. This motion was instituted in bad faith. Defendant's counsel knew or should have known that the Brussels consultation had no connection with this case and that Zale executives had acquiesced in Cleary, Gottlieb's dual role. The motion was a ploy and it was designed as a vexatious and oppressive tactic against plaintiff and its counsel.

28 U.S.C. § 1927 provides that an "attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs." Conduct which may subject counsel to being assessed personally for costs includes "an intentional departure from proper conduct," *United States v. Ross*, 535 F.2d 346, 349 (6th Cir. 1976); "a serious and studied disregard for the orderly processes of justice," *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968), *cert. denied sub nom. Hubbard v. Kiefel*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969); and actions taken in "bad faith." *West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079 (2d Cir.), *cert. denied sub nom. Cotler Drugs, Inc. v. Charles Pfizer & Co.*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). The conduct of defendant's counsel in this case is embraced within any of the above definitions of conduct triggering application of § 1927.

Counsel had knowledge of all the necessary facts long before this motion was instituted, and thus could only have made such a groundless motion in bad faith. In filing the motion, defendant's counsel has burdened Cleary, Gottlieb and plaintiff with an unwarranted increase in the costs of this litigation. This is an unreasonable and vexatious expansion of the costs in this action within the meaning of § 1927. Accordingly, the excess in attorney's fees, expenses and costs necessitated by the motion to disqualify plaintiff's counsel are to be taxed against Robinson, Perlman, Kirschner & Leffler, P. C., counsel for defendant in this action. The matter is referred to Mag-

istrate Raby for a determination as to the amount of the costs to be assessed.

Pending before Magistrate Raby at present is a motion for summary judgment. The parties are to file their joint pretrial order in this case two weeks from the date Magistrate Raby reports on that motion. That two weeks time will not be enlarged by an appeal from the Magistrate's decision, nor will any extension beyond the two weeks time be granted either by Magistrate Raby or by this court. Counsel are warned that failure to file may result in dismissal with prejudice or default judgment.

IT IS SO ORDERED.

## SUPPLEMENTAL OPINION

In a prior opinion and order dated April 6, 1978, the court concluded *sua sponte* that the motion to disqualify plaintiff's counsel was "an unreasonable and vexatious expansion of the costs in this action within the meaning of [Title 28, U.S.Code] § 1927," and that "the excess in attorneys' fees, expenses and costs necessitated by the motion . . . are to be taxed against Robinson, Perlman, Kirschner & Leffler, P. C. . . ." The matter was referred to Magistrate Raby for the amount of costs to be assessed. Defendant's counsel moved for reconsideration and that motion was denied. Subsequent to the filing of the above April 6 opinion and order, the main action was settled by stipulation approved by this court on April 20, 1979. The settlement expressly separated out the question of assessment of attorneys' fees, costs and expenses leaving that matter a live controversy for further resolution here and, if necessary, on appeal.

Magistrate Raby wrote the parties on April 10, asking that plaintiff's counsel set forth in affidavit form "the amount of fees required to be paid by plaintiff to special counsel . . . together with an estimate of the amount of professional time required by plaintiff's counsel in its consultations with special counsel concerning the motion to disqualify." An affidavit was filed on April 18, 1979, by George Weisz of Cleary, Gottlieb, Steen & Hamilton ("Cleary, Gottlieb"), attorneys for plaintiff,

to which was appended a copy of the bill for $40,747.05 rendered on April 17, 1979, to plaintiff by special counsel Proskauer, Rose, Goetz & Mendelsohn for their services in opposing the motion to disqualify plaintiff's counsel. This embraced services from December 1, 1978, to April 10, 1979. In addition, Cleary, Gottlieb expended 29 hours on the motion (20 hours by Weisz, a partner and 9 hours by Webster, a partner who works in the Belgian office and Karlynn Hinman, an associate; Webster traveled to New York from Belgium and spent 2 days here in connection with the matter).

Defense counsel filed nothing before the Magistrate in opposition. In fairness, Magistrate Raby's letter of April 10 could have been read as not affording them the opportunity to file opposition papers. While the Magistrate's letter called only for a response from plaintiff's counsel as to its excess costs, it should have been evident to defense counsel that once plaintiff had submitted its bill that it was proper to file opposing papers before the Magistrate. Without opposition, the Magistrate allowed only part of the costs, fees and expenses which plaintiff had been required to expend. He allowed $25,000 for attorneys' fees for special counsel, $3,800 for reasonable attorneys' fees to Cleary, Gottlieb and $1,200 reimbursement for travel expenses of Webster from Belgium to New York.

Defense counsel has moved for an order vacating the report on the theory that the court lacks the power to make assessment against defendant's counsel and that, in any case, it was imposed without formal notice or hearing. It is urged that the costs were imposed on the "scantest evidentiary basis," since the affidavit contained no description of the services performed by special counsel, nor of the hours devoted thereto by specific attorneys. It is alleged that detailed affidavits from special counsel should have been required, setting forth the nature of the work performed and the time spent by each individual. Defense counsel argues that "[o]nly then would my firm have been in position to conduct a meaningful inquiry into the propriety of the fees claimed by special counsel, an inquiry, incidentally that

would have included the right to cross examine special counsel with regard to the services allegedly rendered by it." Moreover, counsel for defendant questions the necessity for eminent special counsel to devote over 200 hours to contest a motion described as patently frivolous by the court. He contends that "[i]t should not require much work at all for competent, to say nothing of eminent, counsel to defeat a 'patently frivolous' motion." (Aff. Herbert Robinson, counsel for Defendant pp. 3–4).

■ First, while the Magistrate was free if he chose to conduct an evidentiary hearing on the issue of excessive costs necessitated at which time he could have required counsel to be available for cross examination, the usual method is for the matter to be handled by way of affidavit. Defense counsel argues that special counsel should have been required to set forth the nature and extent of services rendered. This contention overlooks Magistrate Raby's complete familiarity with the case. Many of the services of special counsel were performed before him, and he could properly assess the hours of professional time required. Furthermore, this is not a situation in which the propriety of a claimed fee for class counsel must be determined, where the court must protect against the litigation being a bonanza for class counsel without monetary benefit to the class.

■ The court found that the defense counsel had needlessly and vexatiously required plaintiff and its counsel to expend excess funds to respond to a patently frivolous motion. The power to tax attorneys' fees against defense counsel was invoked under 28 U.S.Code § 1927. That power also exists under Rule 11, F.R.Civ.P., *see Nemeroff v. Abelson*, 469 F.Supp. 630 (S.D.N.Y. 1979), and as part of the equity power of the court, *see Alyeska Pipeline Services Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The argument that it did not require much effort to defeat a patently frivolous motion, is another one of defense counsel's puerilities. Indeed, it was special counsel's convincing

evidentiary presentation of Zale's knowledge and acquiescence in Cleary, Gottlieb's dual role and its inferential proof that defense counsel knew of the representation and Zale's approval thereof long before the motion was filed that established the motion's frivolity. Unfortunately, considerable effort and energy are often required to establish to the satisfaction of the trier of fact that a matter is clearly lacking in substance.

 At any rate, the assessment seems fair and allowable under § 1927 with the exception of $1,200 assessed for Webster's travel. The cases do not allow for travel as a taxable cost under § 1927. *See Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1170 (7th Cir. 1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). Accordingly, that amount is deleted.

 Plaintiff contends that Magistrate Raby had no authority to reduce the amount requested. Plaintiff is in error. The reason for referring the matter to Magistrate Raby was that his familiarity with the case through supervision of pretrial discovery and his familiarity with the time and effort spent on the motion qualified him to make a fair assessment of what would be reasonable and just to assess against defense counsel for their vexatious conduct.

On the merits of the underlying matter whether counsel should be taxed at all, defendant cites *International Business Machines Corp. v. Levin*, 579 F.2d 271 (3rd Cir. 1978). That case is clearly distinguishable from this one, since here the client had all the facts regarding the purported conflict.

Accordingly, attorneys' fees of $25,000 for special counsel and $3,800 for Cleary, Gottlieb for a total of $28,800 are taxed against Robinson, Perlman, Kirschner & Leffler, P. C.

SETTLE ORDER.