**In re Isaac SILVERMAN, Bankrupt.**

**Bankruptcy No. 77 B 2988.**

United States Bankruptcy Court, S. D. New York.

Aug. 11, 1981.

See also, Bkrtcy., 1 B.R. 107.

Leinwand, Maron, Hendler & Krause, New York City, for bankrupt.

Weil, Gotshal & Manges, New York City, for Leucadia, Inc.; Martin J. Bienenstock, New York City, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Leucadia, Inc. (formerly known as James Talcott, Inc.), a partially secured creditor, seeks an order directing the bankrupt, Isaac Silverman, and his attorneys, the firm of Leinwand, Maron, Hendler & Krause, to pay costs and expenses, *including attorneys' fees*, incurred in defending against Silverman's motion to dismiss Leucadia's complaint objecting to Silverman's discharge. Silverman's motion to dismiss the complaint was denied by this court on October 15, 1979; *In re Silverman*, 5 B.C.D. 943, 1 B.R. 107 (Bkrtcy.S.D.N.Y.1979). This decision was affirmed by the District Court in an unreported opinion dated February 14, 1980. Silverman's discharge was ultimately denied by this court in an order for summary judgment, dated April 24, 1981, on grounds that he failed to keep financial records as to his personal affairs, as proscribed under Bankruptcy Act § 14(c)(2), 11 U.S.C. § 32(c)(2), and that he failed to obey court orders as treated under Bankruptcy Act § 14(c)(6), 11 U.S.C. 32(c)(6). *In re Silverman*, 10 B.R. 727 (Bkrtcy.S.D.N.Y. 1981).

Leucadia contends that Silverman's application to dismiss Leucadia's complaint objecting to his discharge was brought in bad faith and contained baseless charges, including an allegation that "the actions and conduct of Bienenstock, [an associate in the law firm of Weil, Gotshal & Manges], Cumming and Mara [officers of Leucadia] amount to subornation of perjury, . . .". The application was signed by Elliot L. Krause, Esq., a member of the firm of Leinwand, Maron, Hendler & Krause, counsel for Silverman, the above-captioned bankrupt. The hearing with respect to Silverman's application to dismiss Leucadia's complaint was held on August 29, 1979, at which time Silverman and Mr. Krause testified in support of the motion. Messrs. Mara, Cumming and Bienenstock testified in rebuttal. Mr. Ray Fitzgerald, an attorney for Leucadia testified at an additional hearing on October 11, 1979.

The bankrupt's motion addressed to Leucadia's complaint to deny his discharge charged that Talcott (now Leucadia) exerted improper pressure on the bankrupt in an attempt to coerce him to give false testimony in exchange for withdrawal of the objections to his discharge. Leucadia now claims costs and attorneys' fees from the bankrupt and his counsel, Leinwand, Maron, Hendler & Krause, on the ground that Leucadia was required to rebut this charge, which it did successfully when this court dismissed the bankrupt's motion on October 15, 1979, and was further required to incur additional legal fees and costs when the bankrupt unsuccessfully appealed this court's decision.

In affirming this court's dismissal of the bankrupt's motion, Judge Brieant stated:

"It is sufficient for purposes of this appeal that the Bankruptcy Judge has found that there were no oppressive or improper suggestions made to Silverman, and therefore there is no factual predicate for the claim . . .". (Opinion dated February 14, 1980, p. 4)

Additionally, Judge Brieant noted:

"[T]he conversations which Talcott and its representatives had with the bankrupt about giving testimony in the fidelity bond case are said to have arisen as part of settlement discussions. Indeed, some

of the discussions were conducted between attorneys. Such testimony of discussions between attorneys seeking to settle a controversy, unless in themselves they involve the actual commission of a crime, which these discussions do not, would be inadmissible under Rule 408, F.R.Evid. The public policy behind that Rule is to encourage settlement discussions. If settlement discussions are later to be brought in question in the context of litigation, the free exchange of ideas between lawyers necessary to adjust and compromise disputes would be severely chilled. In this connection it is to be noted that the contemporaneous memoranda of the attorneys *show clearly that there was no overreaching or wrongdoing of any kind.* Indeed, Talcott was apparently looking principally for documents, and a witness to authenticate the documents, since it regarded the credibility of the bankrupt as having little value." [Emphasis added].

The crucial issue to be decided here is whether or not Leucadia should be awarded attorneys' fees against Leinwand, Maron, Hendler & Krause for having to defend against the charges in the bankrupt's motion to dismiss Leucadia's complaint to deny his discharge. Leucadia looks mainly to the bankrupt's counsel because the likelihood of collecting these charges from the bankrupt, even if allowed, is questionable.

### COSTS

■ A losing party, and not counsel for the losing party, may be required to pay to the prevailing party in a federal court, within the court's discretion, ordinary costs as delineated in 28 U.S.C. § 1920, such as fees for the clerk and marshal, stenographic charges, printing and witness fees, costs for obtaining exemplification of copies, docket fees and compensation of court-appointed experts and interpreters. The so-called "American Rule" ordinarily excludes attorneys' fees from the statutory costs that a winning party may recover. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Fleischmann*

*Corp. v. Maier Brewing,* 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). However, there is statutory authority for imposing personal liability on an attorney for excessive costs incurred by a party because the attorney multiplied the proceedings in the case "unreasonably and vexatiously." 28 U.S.C. § 1927. Leucadia urges that 28 U.S.C. § 1927 is also precedent for including attorneys' fees as an element of costs recoverable from the bankrupt and from his counsel, Leinwand, Maron, Hendler & Krause for defending against the motion which this court found to be factually and legally unsupportable.

### COUNSEL'S STATUTORY PERSONAL LIABILITY FOR ATTORNEYS' FEES

■ Prior to its amendment on September 12, 1980, 28 U.S.C. § 1927 read as follows:

"1927. Counsel's liability for excessive costs

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."

Thus, the statute was silent as to whether or not "costs" included attorneys' fees as recoverable from lawyers who multiply court proceedings vexatiously.

On September 12, 1980, 28 U.S.C. § 1927 was amended by Public Law 96–349, § 3, 94 Stat. 1156, and now reads as follows:

"§ 1927. Counsel's liability for excessive costs:

Any attorney or other person admitted to conduct cases in any Court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses and *attorneys' fees* reasonably incurred because of such conduct. [Emphasis Added]"

Although Weil, Gotshal & Manges, counsel for Leucadia, cite the amended statute as authority for assessing attorneys' fees

against the bankrupt and his counsel, Leinwand, Maron, Hendler & Krause, they disingenuously failed to note that the bankrupt's motion to dismiss this court's denial of that motion and the District Court's affirmance of the denial all occurred prior to the amendment of 28 U.S.C. § 1927 on September 12, 1980. Hence, counsel for Leucadia would have the court believe that the amendment of 28 U.S.C. § 1927 was of no consequence and that attorneys' fees were recoverable as excessive costs under this statute before it was amended. Indeed, to support this argument they cite four cases in the Second Circuit which held that 28 U.S.C. § 1927, as it read before the amendment on September 12, 1980, supported an allowance of attorneys' fees against counsel for a party who had been vexatious in increasing costs through improper motions, actions or delays. *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2d Cir. 1977); *Nemeroff v. Abelson*, 469 F.Supp. 630 (S.D.N.Y.1979); *North American Foreign Trading Corp. v. Zale*, 83 F.R.D. 293 (S.D.N.Y. 1979); *Fisher v. Fashion Institute of Technology*, 491 F.Supp. 879 (S.D.N.Y.1980). In the *Fisher* case, supra, the court disagreed with the Fifth and Sixth Circuits which held that counsel fees under 28 U.S.C. § 1927, before its amendment, may not be considered as included under "costs", referring to *Monk v. Roadway Express, Inc.*, 599 F.2d 1378 (5 Cir. 1979) and *United States v. Ross*, 535 F.2d 346 (6 Cir. 1976).

However, counsel for Leucadia did not mention in their brief that the cases were divided on this subject and that the Fifth Circuit in the *Roadway Express* case, supra, expressly rejected the construction of 28 U.S.C. § 1927 as viewed by the courts in the *Browning, Nemeroff* and *Zale* cases. Indeed, Weil, Gotshal & Manges failed to inform this court that the *Roadway Express* case in the Fifth Circuit was affirmed by the United States Supreme Court sub. nom. *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), and that there now exists a United States Supreme Court interpretation that rejects counsel's argument and holds that 28 U.S.C.

§ 1927, as it read prior to its amendment on September 12, 1980, cannot support the imposition of attorneys' fees against lawyers who unreasonably extend court proceedings.

Moreover, Weil, Gotshal & Manges also failed to state in their brief that *Nemeroff v. Abelson*, 469 F.Supp. 630 (S.D.N.Y.1979), upon which they heavily rely, was reversed in part on appeal when the Second Circuit, in a per curiam opinion stated:

> "We hold, based on our careful examination of the entire record, that the district court's finding that the action was commenced in bad faith was clearly erroneous."

*Nemeroff v. Abelson*, 620 F.2d 339 at 347 (2nd Cir. 1980).

After this court discovered the reversal, it received a letter from Weil, Gotshal & Manges calling attention to the reversal and noting that the *Nemeroff* case was only reversed in part on the clearly erroneous finding of bad faith, and that Weil, Gotshal & Manges believe that based on the other authorities they did cite in their brief, Leucadia's motion should be granted. However, the United States Supreme Court's decision in the *Roadway* case is dispositive of this issue.

█ Although the present language in 28 U.S.C. § 1927 authorizes the imposition of counsel fees on lawyers who vexatiously extend court proceedings, it has been ruled that § 1927, as it read before the amendment "is penal in nature ... and should be strictly construed ...". *United States v. Ross*, 535 F.2d 346 (6 Cir. 1976). Accordingly, this court will not apply the amended § 1927 retroactively to the conduct complained of prior to its amendment. See, *Howard v. Allen*, 368 F.Supp. 310 (D.C.S.C. 1973), aff'd 487 F.2d 1397 (4 Cir. 1973), cert. den. 417 U.S. 912, 94 S.Ct. 2611, 41 L.Ed.2d 216 (1974); *Smith v. Putnam*, 250 F.Supp. 1017 (D.C.Colo.1965).

### Inherent Power to Assess Attorney's Fees Against Counsel

Leucadia also contends that the Bankruptcy Court has inherent power to assess

attorneys' fees against Leinwand, Maron, Hendler & Krause, as counsel for the bankrupt. The general rule on the subject of counsel fees was expressed by Mr. Justice White in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240 at 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), when he said:

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."

He also went on to say, at page 257, 95 S.Ct. at 1621:

"Other recent cases have also reaffirmed the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees."

Mr. Justice White recognized, however, that in exceptional cases the federal courts have inherent power to

"assess attorney's fees for the 'willful disobedience of a court order . . . as part of the fine to be levied on the defendant[,] *Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426–428 [43 S.Ct. 458, 465–66, 67 L.Ed. 719] (1923),' *Fleischmann Distilling Corp. v. Maier Brewing Co.*, supra, [386 U.S.] at 718 [87 S.Ct. 1404, 1407, 18 L.Ed.2d 475]; or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . .' *F. D. Rich Co. [v. United States]*, 417 U.S. 116, at 129 [94 S.Ct. 2157, 2165, 40 L.Ed.2d 703] [1974] (citing *Vaughan v. Atkinson*, 369 U.S. 527 [82 S.Ct. 997, 8 L.Ed.2d 88] (1962))." 421 U.S., at 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141.

The bad faith exception for counsel fees was also interpreted by Mr. Justice Powell, in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) to include not only cases where the action was filed in bad faith, but also as to counsel's conduct of the litigation. Mr. Justice Powell reasoned that if a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial process.

Hence, it must be considered whether or not the bankrupt's motion to dismiss Leucadia's complaint objecting to his discharge was an abuse of judicial process, as claimed by Leucadia, or was brought in good faith and was not frivolous as viewed by Leinwand, Maron, Hendler & Krause on their own behalf.

In determining whether or not Leinwand, Maron, Hendler & Krause acted in bad faith, this court must first charitably disregard the conduct of Weil, Gotshal & Manges as innocent ignorance rather than bad faith when they invited this court to commit error by accepting their position that there was statutory authority for imposing attorneys' fees on the Leinwand firm for the period in question when in fact:

(a) 28 U.S.C. § 1927 was amended on September 12, 1980, a fact which Weil, Gotshal & Manges did not disclose in their brief.

(b) The United States Supreme Court in *Roadway Express Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), which Weil, Gotshal & Manges did not cite, expressly rejected the interpretation advanced in the cases which they did cite.

The basic underpinning for the bankrupt's motion to dismiss Leucadia's complaint for a denial of his discharge was that the relief requested by Leucadia should be denied on the theory of unclean hands. In the application dated August 17, 1979, the bankrupt characterized his position as follows:

"6. The thrust of this application is that plaintiff instituted this adversary proceeding in bad faith, and solely for the purpose of compelling and coercing the defendant to testify falsely in another proceeding for the benefit of James Talcott, Inc."

The bankrupt then went on to relate what had occurred during settlement discussions with representatives of Leucadia and their counsel which formed the basis for his belief that they acted in bad faith and with unclean hands. It was his belief that Leucadia and its counsel desired his

testimony in a suit on a fidelity bond to the effect that he had bribed Talcott (now Leucadia) employees in order to obtain large advances. Since the bankrupt maintained that he gave no bribes he expected that Leucadia would believe him so that their desire for his testimony could only mean that they wanted him to lie and therefore they dangled his discharge as consideration for his cooperation. The bankrupt and his attorneys, Leinwand, Maron, Hendler & Krause, gratuitously and erroneously concluded as a matter of law that such "actions, statements and conduct of Bienenstock, Cumming and Mara amount to subornation of perjury ...". These allegations were worded in the bankrupt's application of August 17, 1979, as follows:

"17. On July 5, 1979 defendant's attorneys met with Silverman, explained what had transpired in the course of the conversations with Bienenstock and Fitzgerald, at which point the defendant advised his attorneys that approximately four or five months ago he had a conversation with David Cumming, an officer of the plaintiff, at which time the defendant was advised that the plaintiff was about to institute or had instituted suit on a fidelity bond. Cumming stated that if Silverman furnished satisfactory testimony implicating Talcott's employees, it would be most helpful. Subsequently, on a date which the defendant does not recall, the defendant was advised by both Cumming and Tom Mara, another employee of Talcott, that Silverman's testimony in the fidelity bond suit would have a direct bearing on whether or not the plaintiff would be prepared to discontinue the discharge proceeding. At this time Silverman advised both Cumming and Mara that he would not commit perjury for any one for any price.

18. During all of the conversations that the plaintiff had with Cumming and Mara, or during the conversation that defendant's attorneys had with Bienenstock and Keane, they were advised that at no time did the defendant offer a bribe to anyone.

19. It is submitted that the actions, statements and conduct of Bienenstock, Cumming and Mara amount to subornation of perjury, that the objections to the defendant's discharge are grounded in and permeated with bad faith, and should be dismissed."

■ Even if Leucadia and its counsel wanted the bankrupt to testify falsely in a fidelity bond suit and exerted pressure for this purpose, which he resisted, such conduct and statements in this regard do not constitute the crime of subornation of perjury. The *sine qua non* of a charge of subornation is that perjury has in fact been committed. *U. S. v. Tanner*, 471 F.2d 128, 135 (7 Cir. 1972) cert. den. 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972). Obviously there was no subornation of perjury because the bankrupt never testified in connection with the fidelity bond suit in question. Leinwand, Maron, Hendler & Krause simply did not understand the essential ingredients for a case of subornation of perjury. Nevertheless, they should not have asserted as a conclusion of law a charge that was legally and factually incorrect. Such cavalier practice is not to be condoned, as in the instance of Weil, Gotshal & Manges, who should not have omitted the date of a statutory amendment, an applicable United States Supreme Court case and the reversal of a relied upon cited case and then belatedly advise the court by letter that notwithstanding the reversal, the other cited authorities support their position. This court now charitably concludes that ignorance of the law existed on both sides.

■ Leucadia's additional legal work and expense entailed in defending against the bankrupt's motion, bottomed on the theory of overbearing conduct and unclean hands, would have been incurred even if the bankrupt and his counsel had not erroneously concluded that such conduct amounted to subornation of perjury. Therefore, it must be determined if the motion was brought in bad faith. In affirming this court's dismissal of the bankrupt's motion, Judge Brieant noted on page 3 of his unreported opinion, dated February 4, 1980:

"Perhaps a case can be imagined in which the conduct of an objecting creditor would be found to be so overbearing that balanced against the interest of the other creditors, if any, and the general public, an objecting creditor might be denied relief under the doctrine of clean hands in equity."

This court cannot deny the possibility that the bankrupt may have erroneously imagined that Talcott (now Leucadia) really wanted his testimony in the proposed fidelity suit, rather than documentary evidence, and that since the bankrupt said that he gave no bribes, Talcott (now Leucadia) should have believed him and therefore, his cooperation could only have meant his falsely testifying that he gave bribes when he previously said he had not bribed anyone to obtain the large overadvances involved. In any event, it cannot be concluded that this belief, even though erroneous, was unreasonable. Indeed, in denying the bankrupt's motion, this court stated in Finding 18 as follows:

"At most, it can be found that Talcott dangled the discontinuance of its objections to the bankrupt's discharge as consideration for his cooperation in the assertion of Talcott's claim under its fidelity bond if the bankrupt could furnish satisfactory evidence of any infidelity on the part of Talcott employees."

*In re Silverman*, 5 B.C.D. 943, 945, 1 B.R. 107, 111 (Bkrtcy.S.D.N.Y.1979). Evidently the bankrupt believed that such conduct was overbearing and in bad faith. He should not now be deemed to have acted unreasonably in asserting this charge in the belief that it was a ground for dismissing Leucadia's complaint, even though he could not establish his claim. Therefore, the bankrupt's counsel, Leinwand, Maron, Hendler & Krause should not be penalized for asserting this claim, notwithstanding that it could not be established. This point was noted by the Second Circuit Court of Appeals in the *Nemeroff* case in reversing the lower court's ruling as to bad faith:

"[3] A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.[16] The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*." [Emphasis added] *Nemeroff v. Abelson*, 620 F.2d 339 (2d Cir. 1980) at page 348.

However, this court repeats that it does not condone that the bankrupt and his counsel charged Leucadia's representatives and its attorneys with conduct which they said amounts to the crime of subornation of perjury. This is a very serious charge, notwithstanding that it is legally insufficient. Leinwand, Maron, Hendler & Krause are admonished for such questionable practice even though the basic claim they asserted in their motion was neither colorable nor sufficiently unreasonable as to constitute a willful abuse of judicial process.

Accordingly, Leucadia's application that costs and counsel fees be imposed upon Leinwand, Maron, Hendler & Krause is denied. However, Leucadia, as the prevailing party, is entitled to tax ordinary costs, pursuant to 28 U.S.C. § 1920, against the bankrupt.

IT IS SO ORDERED.