**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ralph W. ROSS, Defendant-Appellant.**

**No. 75–1615.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 13, 1976.

Decided May 11, 1976.

---

Jerry P. Hontas, Canton, Ohio, for defendant-appellant.

Fredrick M. Coleman, U. S. Atty., David Felman, U. S. Dept. of Justice, Cleveland, Ohio, Michael W. Farrell, c/o T. George Gilinsky, Washington, D. C., for plaintiff-appellee.

Before WEICK, CELEBREZZE and McCREE, Circuit Judges.

McCREE, Circuit Judge.

This appeal requires us to determine whether a district court may require an attorney who fails to appear at a scheduled trial date to pay, pursuant to 28 U.S.C. § 1927,[1] the costs of summoning a jury venire of 42 persons. The statute permits a district court to require an attorney to personally satisfy costs when he "so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously." We determine (1) that the attorney's conduct did not "unreasonably and vexatiously" increase costs, and (2) that the expense of the jury is not a "cost" within the meaning of the statute. Accordingly, we reverse the district court's judgment.

On November 16, 1973, appellant Ross, a lawyer who resided in Canton, Ohio, entered his appearance for defendant Florea in a federal criminal case docketed in the Northern District of Ohio charging George M. Florea and Raymond Vara with gambling in violation of 18 U.S.C. §§ 371 and 1084. Two weeks later, Attorney Robert J. Rotatori of Cleveland, Ohio, entered his appearance as co-counsel for defendant Florea in the same case. On June 25, 1974, the district court notified both defendants and their attorneys that trial was scheduled to begin Monday, July 15, 1974. On the morning of Friday, July 12, 1974, Mr. Rotatori informed the district judge before whom the case was to be tried that both defendants in the case were considering guilty pleas. Later that afternoon he returned to the district judge to advise the court that Florea had discharged him as counsel. In response to a specific inquiry from the district judge, Mr. Rotatori told the judge that appellant Ross would conduct Florea's defense at trial on Monday.

At 9:15 a. m. on Monday, July 15, when the case was called for trial, all parties were present except Florea's attorney, Ross. The district court learned from Florea that Mr. Ross was defending another client in a murder trial in the Stark County Common Pleas (state) Court. Thereupon the district court dismissed the panel of 42 persons which had been summoned as prospective jurors specifically for this case, and adjourned the proceedings until Wednesday, July 17, 1974, at 9:15 a. m.

On July 17, Mr. Ross was present, and the district judge asked him to explain his absence on Monday. Ross apologized to the

1. 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multi- plies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

court for the inconvenience he had caused and explained that on the previous Wednesday, July 10, he had accepted employment as defense counsel in a murder case in Stark County, Ohio. Ross said that he originally expected that the murder trial would be concluded by Friday, in time for him to be present for the Monday federal trial. He stated that on Friday morning, July 12, when it appeared that the trial would continue until Monday, he instructed his secretary to notify Mr. Rotatori that he could not be in federal court on Monday. Ross explained that his secretary informed him that she did, and that Rotatori told her: "He had talked to Mr. Florea today and there was going to be a plea because that [sic] things had been worked out." Some confusion was introduced when Ross related that he returned a telephone call to an assistant United States Attorney who had called him while he was at trial in Stark County. The government attorney informed Ross for the first time, at about 4:30 p. m. Friday afternoon, that Rotatori had been discharged by Florea. Nevertheless, Ross told the court that he assumed that Rotatori, whom he viewed as the principal attorney in their joint representation of Florea, was going to appear at federal court to act as counsel for Florea when he pled guilty.

The district judge made the following statement after Ross had explained his absence and failure to notify the court:

The Court well appreciates the fact that you commenced a murder trial a week ago today, and your involvement in that trial was, of course, a valid reason for your not—your failure to appear here. And the Court, upon proper notification, would certainly have extended you the courtesy as well as the excuse for not appearing here on Monday.

Of course, the Court was not aware of any arrangements as between you and Mr. Rotatori outside of the fact that he was co-counsel of record. Mr. Rotatori did notify the Court that he had withdrawn or had been discharged, I should say, as counsel of record on Friday. And the information coming to the Court at

that time was that the trial, however, would commence on Monday morning as scheduled.

With that in mind the Court proceeded as it had intended to proceed, and the parties appeared. And as a result of that appearance and the failure to proceed in this matter resulted in not only an inconvenience to the Government and its witnesses and your co-defendant and counsel, as well as the Court, it resulted in the accrual of certain expenses for which, under the circumstances, could have been avoided by perhaps a 30-cent phone call.

What do you propose we do as relates to the expenses involved in bringing in 43 jurors, and bringing in a number of witnesses from Las Vegas who have been just sitting here, Mr. Ross? What do you propose that we do as to those expenses?

After Ross again explained that he had been "deeply involved in a murder trial," and again apologized to the court, the district judge called the jury clerk to ascertain the total cost of summoning the jurors on Monday, July 15. The jury clerk reported that 42 persons had been summoned for jury service, solely for the case involving Vara and Florea. She stated that the cost of their attendance and mileage amounted to $1,027.80. In addition, it was shown that five FBI special agents and one civilian witness had been summoned to testify at the trial, and that they were required to wait until Wednesday because of Mr. Ross' absence on Monday.

The district judge then addressed the following remarks to Mr. Ross:

I believe your complete negligence in failing to take into consideration the proceedings scheduled before this Court to commence on July 15th constituted a violation of that section. [28 U.S.C. § 1927]

For that reason the Court is going to assess only the jury costs for 42 prospective jurors that were summoned for this particular case in the amount of $1,027.80. The Court is going to waive assessing the costs for the witnesses that the Government was required to maintain

during the period of delay for the reason that it appeared to the Court that your actions were not wilful, although negligent, perhaps irresponsible. The Court will not consider contempt charges at this time.

On September 20, 1974, the district court issued a written order assessing appellant with the costs of summoning the jury. In the order, the district court made these findings of fact:

1. The failure of attorney Ross to appear on July 15, 1974, or to notify the Court of his inability to appear at the scheduled time was not purposeful or malicious;

2. The conduct of attorney Ross does not warrant the initiation of contempt proceedings;

3. The conduct of attorney Ross multiplied the proceedings so as to unreasonably increase the costs thereof in an amount of $1,027.80;

4. The taxpayers should not be required to bear the burden of counsel's inadvertent or negligent acts.

On appeal, appellant contends that because his conduct was not intentional and did not evidence a "serious and studied disregard for the orderly processes of justice," he should not be held for the costs of the aborted jury venire. We agree.

## "VEXATIOUS" CONDUCT UNDER § 1927

The legislative history of the statute is sparse, and the cases interpreting it are not very helpful in divining the congressional purpose. Nevertheless, the precedents that we have found recognize that the Congress intended to impose a sanction on conduct more culpable than mere unintentional discourtesy to a court when it conjoined the word "vexatiously" with "unreasonably." Webster's Third New International Diction-

ary (1971) defines "vexatious" as "lacking justification and *intended* to harass." [Emphasis supplied.]

■ Since the statute employs the unusual approach of requiring an attorney personally to pay costs instead of the customary one of placing the responsibility for them upon a litigant, it seems appropriate not to impose this sanction for an unintended inconvenience to the court no matter how annoying it might be. Personal responsibility should, in this instance, flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court.

This circuit spoke long ago on the subject in *Toledo Metal Wheel Co. v. Foyer Bros. & Co.*, 223 F. 350 (6th Cir. 1915). In that case the district court invoked the predecessor statute [2] to 28 U.S.C. § 1927 and imposed upon defendant's attorney the costs of taking a deposition because the attorney excessively cross-examined two witnesses and unwarrantably instructed another witness not to answer proper questions. We upheld the district court's finding that the attorney's conduct was "obnoxious to the orderly, reasonable, and proper conduct of an examination" and determined that this was sufficient for imposition of the costs.

A more recent case from the Seventh Circuit, *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 12 A.L.R.Fed. 895 (7th Cir. 1968), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969), held that the power to impose costs under 28 U.S.C. § 1927 should be exercised "only in instances of a serious and studied disregard for the orderly processes of justice." *See also West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971) (requiring a "clear showing of bad faith"). In the *Kiefel* case, the court noted that defendant's

2. The predecessor statute, section 982 of the Revised Statutes, was, in material respects, identical to the current statute:

If any attorney, . . . admitted to conduct causes in any court of the United States, . . . . appears to have multiplied the pro-

ceedings in any cause before such court, so as to increase costs unreasonably and vexatiously, he shall be required, by order of the court, to satisfy any excess of costs so increased.

attorney had engaged in such professional misconduct before the district court (including using harassing and obstructionist tactics) as to require a new trial. During the second trial, the attorney continued this course of conduct by seeking postponements of the trial and then appearing on the trial date to ask for a stay due to appeal of the assessment of costs in the first trial. The Seventh Circuit approved assessing costs against the attorney in these circumstances, specifically observing that: "His acts of misconduct were correctly found to be *intentional*, involving serious breaches of the Canons of Ethics." 404 F.2d at 1167. [Emphasis supplied.]

█ The lawyer's conduct in the case before us is quite different. The reason for Mr. Ross' failure to appear on time in court and the reason for his failure to inform the court that he could not appear was, according to the district judge, "not purposeful or malicious," but instead the result of "counsel's inadvertent or negligent acts."

The district court's findings may not be set aside unless they are clearly erroneous, and we agree with the district judge that it was unreasonable for Mr. Ross to assume that Mr. Rotatori would represent Florea for the purpose of pleading guilty to the offense when Ross also had been informed that Rotatori had been discharged. Mr. Ross *should* have realized that there was at least a possibility that his client would be unrepresented at the court proceeding on Monday. However, in finding that the costs had been unreasonably increased through "counsel's inadvertent or negligent acts," the court did not also find that the costs had been *vexatiously* increased by conduct that amounted to a "serious and studied disregard for the orderly processes of justice." *Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d at 1167. If there had been a finding of intentional or reckless conduct, we would not have set it aside on this record.

On the contrary, however, the district court expressly found that Ross' conduct was not purposeful or malicious and did not warrant initiation of contempt proceedings.

## ALLOWABLE "COSTS"

█ We believe that the district court erred in assessing the cost of summoning the jury venire for another reason. Section 1927 refers to increased "costs" caused by an attorney's conduct before a federal court. Although there are few cases considering the definition of "costs" under this section, the Seventh Circuit has determined that:

[T]he section does not deal with the question of the nature or amount of costs to be allowed, but authorizes imposition of otherwise *allowable* costs on counsel personally in place of the party for whom he appeared where the circumstances mentioned in the section have occurred.

As succinctly put by another court, the section "merely authorizes the taxing of such excess of costs as arose from unreasonable and vexatious conduct of an attorney, to the attorney himself, as opposed to his client, and *does not create any penalty in favor of the prevailing party, nor does it sanction the taxing of any additions over regular costs.*" *1507 Corp. v. Henderson*, 447 F.2d 540, 542 (7th Cir. 1971), *quoting In re Realty Associates Securities Corp.*, 53 F.Supp. 1013 (E.D.N.Y.1943). [Emphasis supplied.]

The Seventh Circuit affirmed the district court's determination that § 1927 did not permit taxation of attorney's fees as part of the costs. Because § 1927 is penal in nature, we believe that it should be strictly construed, and we agree with the Seventh Circuit's determination that "costs" should be limited to taxable costs. *Cf. Lockett v. Hellenic Sea Transports, Ltd.*, 60 F.R.D. 469 (E.D.Pa.1973).

█ We find no authority for taxing as costs the expenses of calling a jury in federal court. In *Gleckman v. United States*, 80 F.2d 394 (8th Cir. 1935), *cert. denied*, 297 U.S. 709, 56 S.Ct. 501, 80 L.Ed. 996 (1936), the court held that, under a statute permitting a district court to order defendant to pay the "costs of prosecution," the defendant who was convicted of willfully attempting to evade income taxes could not be

required to pay jury fees and mileage (including fees for "jury professional services"), bailiffs' fees, jury meals and lodging. The court explained that:

These items seem self-explanatory, being the expense incurred by the government in providing a tribunal, that is, a judge and jury for the trial of the case, though it may be stated "jury professional services," were amounts paid to a doctor for his services to several of the petit jurors during the trials, and the items total about $2,500.

We do not find any authority for holding that such governmental expense can be taxed against one convicted of a criminal offense as "costs of the prosecution" in the absence of statute or established local practice. The expression "costs of prosecution" means such items of costs as are taxable by statute or by established practice or rule of court based on statute, and in the federal courts, where no federal statute is found to be directly applicable, recourse may sometimes be had to the statutes and practice of the state. See *Henkel v. Chicago, St. P., M. & O. Ry. Co.*, 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386, *Ex parte Peterson*, 253 U.S. 300, 316, 40 S.Ct. 543, 64 L.Ed. 919, *U. S. v. Minneapolis, St. P. & S. S. M. Ry. Co.* (D.C.) 235 F. 951, 954, and cases cited in these opinions. It does not include the general expense of maintaining the system of courts and the administration of justice, all of which is an ordinary burden of government. That the enumerated items could not be taxed as costs was expressly held in *United States v. Murphy* (D.C.) 59 F.2d 734, and we are satisfied with the conclusions concerning taxation of costs there indicated. See, also, *U. S. v. Wilson* (C.C.) 193 F. 1007; *State v. Morehart*, 149 Minn. 432, 434, 183 N.W. 960; *Board of Com'rs v. Board of Com'rs*, 84 Minn. 267, 269, 87 N.W. 846; *McLean v. People*, 66 Colo. 486, 497, 180 P. 676; *Saunders v.*

*People*, 63 Colo. 241, 165 P. 781; *People v. Kennedy*, 58 Mich. 372, 373, 25 N.W. 318; *Stanton County v. Madison County*, 10 Neb. 304, 308, 4 N.W. 1055, citing 1 Bouvier Law Dict. 370; Corpus Juris, vol. 15, § 833, page 330.

80 F.2d at 403.

Accordingly, because Attorney Ross' conduct did not evidence a serious and studied disregard for the orderly processes of justice, and because the cost of a jury [3] is not a taxable cost within the meaning of the statute, we reverse the judgment of the district court.

---

**3.** If the district court's analysis were carried to its logical conclusion, an attorney who caused the proceedings to be extended "unreasonably and vexatiously" could be required to pay the *pro rata* salaries of the judge, his staff, the U. S. Attorney and marshals, in addition to the expenses for any witnesses called. We do not believe that the statute was meant to include such "costs."