In re Alan Miles RUBEN,
Attorney-Appellant.
(85–3987)

Jeanne RATHBUN,
Plaintiff-Appellant, (85–3986)

v.

WARREN CITY SCHOOLS, Robert L. Pegues, Catherine O. Swan, Henry J. Angelo, Willard T. Rubin, Raymond J. Tesner, Mary Milheim, Anthony R. Berarducci, Nicholas J. Angelo, Bart Wilson, William Haas, Steve Hudock, and Bernie Wilson, Defendants-Appellees.

Nos. 85–3986, 85–3987.

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1987.

Decided July 30, 1987.

Libert Pinto (argued), Cleveland, Ohio, for Rathbun.

Stephen W. Gard (argued), Cleveland, Ohio, for Ruben.

Craig D. Leister (argued), Columbus, Ohio, Charles L. Richards (argued), Warren, Ohio, for defendants-appellees.

Before WELLFORD and NORRIS, Circuit Judges, and COHN, District Judge.[*]

COHN, District Judge.

This appeal raises questions about the propriety of sanctions against a plaintiff and one of her attorneys arising out of a sex and national origin discrimination case filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* For the reasons that follow, we reverse the sanctions against plaintiff and her attorney and taxation of costs against plaintiff, and remand the case for further consideration by the district judge.

## I. STATEMENT OF THE CASE

Plaintiff, Jeanne Rathbun, is a naturalized citizen of the United States of French origin. She worked as a janitor at several school buildings in the Warren, Ohio public school system from 1973 to the time she filed the underlying action in 1980, including East Junior High School ("East"), Warren G. Harding High School ("Harding"), and Devon Elementary School ("Devon"). Throughout this period, she alleged that she was denied overtime equal to male

[*] Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation.

janitors and was subjected to physical and verbal abuse and disparate workloads. She claimed a retaliatory transfer from East to Harding in September of 1974 and a retaliatory transfer again in May of 1978 to Devon on account of her complaints of discrimination.

Rathbun filed a charge with the Ohio Civil Rights Commission ("OCRC") in September of 1978, alleging sex discrimination against "Warren City Schools" only[1] and mentioning acts by Bart Wilson, a foreman of custodians and janitors; William Haas, head custodian of the school system; and Steve Hudock, assistant head custodian of the school system. Rathbun also filed a charge with the Equal Employment Opportunity Commission ("EEOC") in October of 1978, again alleging sex discrimination by "Warren City Schools" only. The EEOC charge likewise mentioned Wilson, Haas, and, additionally, Nicholas Angelo, athletic director and then supervisor of business operations for the school system, but it did not mention Hudock. (Rathbun did not complain in the EEOC charge about her time at East Junior High, and there is only an oblique reference to this period in the OCRC charge.)

In March of 1979, the OCRC found probable cause that Rathbun's allegations established a case of sex and national origin discrimination at each of the three buildings she had worked at. The finding was accompanied by a four-page summary of evidence based largely on interviews with Rathbun's co-workers. The EEOC declined to pursue Rathbun's charge and issued a right-to-sue letter in July of 1980. On the basis of the OCRC's attempts at conciliation, the Warren school board offered to allow Rathbun to transfer to any one of twenty-two job sites, including return to Harding. Rathbun refused to work elsewhere, and she declined the jobs offered at Harding in the belief that the jobs would be more strenuous than her old job. In declining the conciliation offers, Rathbun re-

lied on the advice of her then attorney—Shenyey, Berman & Abakumov.

Shenyey, Berman & Abakumov filed this case on October 16, 1980, within ninety days after Rathbun received the EEOC's right-to-sue letter. The individual defendants named were: the superintendent of the Warren City School District at the time of suit (Robert Pegues); the assistant superintendent at the time of suit (Anthony Berarducci); the five members of Warren City School District Board of Education ("the school board defendants") at the time of suit (Catherine Swan, Henry Angelo, Willard Rubin, Raymond Tesner, and Mary Milheim), named in their "representative capacity"; Nicholas Angelo; Bart Wilson; Haas; Hudock; and a fellow janitor, Bernie Wilson.

Shenyey, Berman & Abakumov withdrew from the case in 1981. Defendants do not dispute that the withdrawal was unrelated to the merits of the case. Attorney Elliott Lester substituted as Rathbun's attorney and pursued the case through trial. Because of Lester's inexperience in Title VII cases, in January of 1982 he sought the assistance of appellant Alan Miles Ruben, a law professor from Cleveland Marshall College of Law. Ruben entered his appearance as "additional counsel" and, according to Lester, provided academic guidance only. The record reflects, however, that Ruben's role was actually more extensive. Lester also used a newly licensed associate, Keith Weiner, on the case for a year beginning in September of 1982.

After Rathbun's presentation of her case-in-chief over four days of trial, the district judge granted defendants' motion to dismiss on June 29, 1984. Fed.R.Civ.P. 41(b). Findings of facts and conclusions of law[2] were filed July 6, 1984; the order of dismissal was entered July 10, 1984. Rathbun filed a notice of appeal on August 6, 1984; the appeal was dismissed for want of prosecution on September 24, 1984. The

---

1. Defendant's proper name appears to be Warren City School District Board of Education.

2. The district judge's findings of fact and conclusions of law, Fed.R.Civ.P. 52(a), total 11

pages. While he determined that Rathbun's case lacked factual and legal support, he did not characterize her case as "frivolous" or intimate that it was instituted or prosecuted in bad faith.

mandate was filed with the district court on October 19, 1984.

The school board defendants filed a motion for attorneys' fees from Rathbun and her attorneys on various legal grounds on October 30, 1984. The other defendants filed a similar motion on January 9, 1985. The district judge held a hearing on the motions on March 15, 1985, at which Lester, Weiner, and defendants' attorneys argued. Ruben was present at the hearing; an attorney argued on his behalf. Although briefs were filed on Rathbun's behalf in opposition to the motions,[3] no one argued her position at the March 15 hearing.

On October 22, 1985, the district judge entered an order and opinion granting defendants' motions. Weiner was sanctioned $500 under Federal Rule of Civil Procedure 11 for filing a motion not well grounded in fact; he does not appeal. Lester was sanctioned $5,000; he also does not appeal.[4] Ruben likewise was sanctioned $5,000. While the district judge's opinion does not clearly delineate the legal grounds for sanctioning Ruben, his opinion mentions Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and a judge's inherent power to punish bad faith conduct during litigation. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980). The bulk of the sanction—$36,159.21—fell on Rathbun. Again, while the district judge did not clearly delineate the legal grounds for sanctioning Rathbun, the opinion offers alternative grounds. Like Ruben's sanction, the first ground cited for the sanction against Rathbun is the inherent power to punish bad faith litigation. The second ground described by the judge was that Rathbun's case was "frivolous, unreasonable, or without foundation...." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (interpreting § 706(k) of Title VII, 42 U.S.C. 2000e–5(k)). The district judge also taxed costs against Rathbun.

## II. TIMELINESS OF THE MOTIONS FOR ATTORNEYS' FEES

The school board defendants filed their motion almost four months after the district judge's findings of fact and conclusions of law and almost three months after the notice of appeal. The motion followed the dismissal of the appeal by less than two weeks. The other defendants filed their motion little more than two months later. There is no local rule in the Northern District of Ohio limiting the time period for the filing of a motion for attorneys' fees. The parties agree that instead of a strict time measure, the test is one of "reasonableness." They dispute the proper milestone for measuring the period and whether the motions here were filed within a "reasonable" time.

The district judge considered the timeliness issue in granting the motions, relying primarily on *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). There, the Supreme Court upheld an award of attorney's fees under 42 U.S.C. § 1988 where the motion for attorney's fees was filed four-and-one-half months after the entry of final judgment. The Supreme Court held that the entertainment of such a motion is within the discretion of the district court, which should consider unfair surprise or prejudice to the affected party and the policy of avoiding piecemeal appeals. 455 U.S. at 454, 102 S.Ct. at 1167.

Ruben argues that the district judge lacked jurisdiction to consider the attorneys' fee motions after Rathbun's appeal was dismissed, relying primarily on *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789 (7th Cir.1983). There, a motion for attorneys' fees under 28 U.S.C. § 1927 filed eight months after dismissal and two months after affirmance was held to be untimely. The *Overnite* court did not, however, overrule or limit two earlier

---

**3.** While the opinion awarding attorneys' fees states that no briefs were filed on Rathbun's behalf (Order at 2), the record contradicts this statement (see R. 123, 124).

**4.** It appears from the record that Lester is no longer a member of the Ohio bar.

cases requiring the filing of such a motion only within a "reasonable" time and, if there is an appeal on the merits, before or during the pendency of the appeal. *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir.1981); *Terket v. Lund*, 623 F.2d 29 (7th Cir.1980).

 The district judge properly rejected Ruben's reliance on *Overnite*. Unlike the appeal in *Overnite*, the appeal here was pending for only a brief time before it was dismissed due to inaction by Rathbun and her attorneys. *Cf. In re Itel Sec. Litig.*, 791 F.2d 672 (9th Cir.1986) (attorney cannot destroy district court's jurisdiction to impose sanctions by withdrawing from case before appeal perfected or while appeal pending), *cert. denied sub nom. Bader v. Itel Corp.*, — U.S. —, 107 S.Ct. 880, 93 L.Ed.2d 834 (1987). The district judge noted that the attorneys' fee motions should not have surprised Rathbun and her attorneys in light of the course of the discovery and trial proceedings. Finally, finding that the motions here were timely filed does not result in piecemeal appeals, since this is the only appeal perfected in this case. We are not asked to reconstruct a case previously reviewed in detail. There is no prejudice to Rathbun and Ruben because the litigation is not being renewed after an appeal on the merits that could have been consolidated with the appeals of the sanctions. *See Obin v. Dist. No. 9 of Intern. Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 583–84 (8th Cir.1981). Ruben's claimed failure to be apprised of the status of the appeal on the merits must be disregarded as his failure to be aware of the actions of Lester, his co-counsel. *See Shea v. Donohoe Constr. Co., Inc.*, 795 F.2d 1071, 1074 n. 3 (D.C.Cir.1986).

We also find support for holding the motions were timely filed in *Fulps v. City of Springfield, Tenn.*, 715 F.2d 1088 (6th Cir.1983). Discussing both *White* and *Obin*, there we allowed a party to seek attorneys' fees eight months after the entry of judgment by the district court if the delay did not prejudice the opposing party,

thus requiring an equitable bar on the ground of laches. *Id.* at 1095–96. While Ruben argues that he was prejudiced, the delay here was shorter than that allowed in *Fulps*, and Ruben does not show that he changed his position or detrimentally relied upon the delay in the filing of the motions.

Ruben also argues that *White* is inapplicable because the only statutory basis for an award of attorneys' fees against him is section 1927, whereas section 1988 was the relevant statute in *White*. We reject this argument. Ruben should have known that defendants, as the prevailing parties, could seek recovery of their attorneys' fees under 42 U.S.C. § 2000e–5(k), the language of which parallels section 1988 and therefore falls within the *White* rationale. To require a defendant to seek attorneys' fees from an attorney immediately after judgment, but allow additional time under *White* to seek recovery of attorneys' fees from a plaintiff, would only exacerbate the problem of piecemeal appeals.

As the Supreme Court noted in *White*, 455 U.S. at 454 & n. 16 and 456, 102 S.Ct. at 1167 & n. 16 and 1168 (Blackmun, J., concurring), the issue of timeliness of a motion for attorneys' fees can be avoided by the adoption of a local rule establishing a timeliness standard. We have previously encouraged the adoption of such local rules. *See Fulps, supra*, 715 F.2d at 1096. See Local Rule 17(n) of the Eastern District of Michigan.

## III. STANDARDS FOR SANCTIONS

### A. Standards for District Judges

The district judge recited four grounds in sanctioning plaintiff and her attorneys: (1) inherent power; (2) 28 U.S.C. § 1927; (3) Federal Rule of Civil Procedure 11; and (4) 42 U.S.C. § 2000e–5(k). An elaborate discussion of the standard for each of these grounds is not necessary. A good discussion of the first three grounds appears in *Oliveri v. Thompson*,[5] 803 F.2d 1265, 1271–75 (2d Cir.1986), *cert. denied sub nom. County of Suffolk v. Graseck*, — U.S.

---

5. To the extent we disagree with the *Oliveri* court's "bad faith" requirement for sanctions

under 28 U.S.C. § 1927, we discuss below the standard for such determinations in this circuit.

——, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). *See generally* Johnson & Cassady, *Frivolous Lawsuits and Defensive Responses to Them—What Relief is Available?*, 36 Ala.L.Rev. 927 (1985); Comment, *Courts Are No Place for Fun and Frivolity: A Warning to Vexatious Litigants and Over-Zealous Attorneys*, 20 Willamette L.Rev. 441 (1984).

As the *Oliveri* court noted, the different grounds for awarding sanctions and shifting attorneys' fees are distinct and require a close and careful analysis. Although the district judge mentioned the various grounds, it is just not clear which of the various grounds was the basis of the sanction against Rathbun and Ruben. We therefor consider each of the grounds advanced by the district judge and briefly set forth the differences between them.

### 1. "Bad Faith"

█ A district judge has inherent equitable power to award attorneys' fees for "bad faith" or frivolous conduct of a case. *See, e.g., Roadway Express, supra,* 447 U.S. at 765–67, 100 S.Ct. at 2463–65 (citing *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977)). This power extends to parties as well as attorneys. *Oliveri, supra,* 803 F.2d at 1272; *Jones v. Continental Corp.,* 789 F.2d 1225, 1229 (6th Cir.1986). We have discussed the "bad faith" rule at length in *Shimman v. International Union of Operating Eng'rs, Local 18,* 744 F.2d 1226, 1228–30 & nn. 5, 6 (6th Cir.1984) (collecting cases), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985).

There are only two aspects of the "bad faith" rule implicated by the district judge's opinion imposing sanctions here— "(1) bad faith occurring during the course of the litigation; [and] (2) bad faith in bringing [the] action or causing [the] action to be brought...." *Shimman,* 744 F.2d at 1230. The district judge did not clearly delineate which of these two grounds supported the sanctions against Rathbun and Ruben, respectively. As we note below, however, the only plausible ground for a bad faith finding under the circumstances

of this case must be found in the conduct of the litigation and not in bringing it.

### 2. 28 U.S.C. § 1927

Section 1927 of Title 28 provides for an award of attorneys' fees where an attorney "multiplies the proceedings in any case unreasonably and vexatiously...." As explained in the legislative history of the 1980 amendment to section 1927, the section is designed as a sanction against dilatory litigation practices and is intended to require an attorney to satisfy personally the *excess* costs attributable to his misconduct. *See* H.R.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.Code Cong. & Ad. News 2716, 2781, 2782. *See generally* Annotation, *What Conduct Constitutes Multiplying Proceedings Unreasonably and Vexatiously so as to Warrant Imposition of Liability on Counsel Under 28 USCS § 1927 for Excess Costs, Expenses, and Attorney Fees,* 81 A.L.R. Fed. 36 (1987).

In *United States v. Ross,* 535 F.2d 346 (6th Cir.1976), we initially defined "unreasonably and vexatiously" to mean "an intentional departure from proper conduct, or, at a minimum, ... a reckless disregard of the duty owed by counsel to the court," *Id.* at 349. We stated in *Ross* that unintended, inadvertent, and negligent acts will not support an award under section 1927, *id.* at 349–50, even if significant costs are incurred by the court and opposing parties as a result thereof. As explained in *Colucci v. New York Times Co.*, 533 F.Supp. 1011, 1013–14 (S.D.N.Y.1982), care must be taken in assessing attorneys' fees under section 1927 lest attorneys be deterred from their duty to "represent [a] client zealously...." *Model Code of Professional Responsibility* EC 7–1 (1980).

More recently, we have noted a relaxed standard applicable to section 1927 determinations. In *In Re: Jaques,* 761 F.2d 302 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1259, 89 L.Ed.2d 570 (1986), the majority opinion suggested that intent is no longer relevant to such determinations, *id.* at 306, although a majority of the panel could not agree on this rule. However, a

similar concept was explicated in *Jones, supra,* as follows:

> 28 U.S.C. § 1927 authorizes a court to assess fees against an attorney for "unreasonable and vexatious" multiplication of litigation *despite the absence of any conscious impropriety.* An attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious." Accordingly, at least when an attorney knows *or reasonably should know* that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the atttorney.

789 F.2d at 1230 (emphasis added). *Jones* makes clear that the standard for section 1927 determinations in this circuit is an *objective* one, entirely different from determinations under the bad faith rule. *See Haynie v. Ross Gear Div. of TRW, Inc.,* 799 F.2d 237, 243 (6th Cir.1986), *cert. dismissed,* —— U.S. ——, 107 S.Ct. 2475, 96 L.Ed.2d 368 (1987).

■ Nevertheless, we do not read these subsequent cases as overruling the thrust of *Ross,* to wit, that simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927. There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. While this ideal may be difficult to implement, judges faced with motions under section 1927 should be mindful that their individual perturbations will not alone justify a sanction.

As we discuss below, section 1927 may support a sanction against Ruben for discrete acts of misconduct.

### 3. Federal Rule of Civil Procedure 11

■ Rule 11 was the basis of the unappealed sanction against Weiner and was again mentioned by the district judge in sanctioning Ruben. Rule 11, however, does not support the sanctions imposed in this case. Rule 11 is concerned with the signing of frivolous pleadings and other papers. *Oliveri, supra,* 803 F.2d at 1274. Because Ruben did not sign any of the pleadings or papers filed in the district court, Rule 11 simply cannot support the sanction against him. Although the language of Rule 11 also allows a sanction against a party, the district judge did not rely upon it in assessing the sanction against Rathbun.

### 4. 42 U.S.C. § 2000e–5(k)

In *Christiansburg, supra,* the Supreme Court described the test for awarding attorney's fees under 42 U.S.C. § 2000e–5(k) to a prevailing defendant in a Title VII case. The Supreme Court stated: "In sum, a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700. As will be described, we conclude that this standard does not support an award of attorneys' fees against Rathbun.

### B. Standard of Review

The standard for our review is whether the district judge abused his discretion in awarding attorneys' fees. *E.g., Jones, supra,* 789 F.2d at 1227, 1233; *Smith v. Smythe-Cramer Co.,* 754 F.2d 180, 185 (6th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985); *Tarter v. Raybuck,* 742 F.2d 977, 986 (6th Cir.1984), *cert. denied,* 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985). We must review the record to determine whether it will support the district judge's factual findings. *See Jones,* 789 F.2d at 1230–31; *Smith,* 754 F.2d at 185; *Tarter,* 742 F.2d at 986.

Rathbun accepts the "abuse of discretion" standard. On the other hand, Ruben conclusorily argues for a *de novo* review of the district judge's conclusion, relying on *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). *Zaldivar* was a Rule 11 case, which, as we have noted, does not apply to Ruben. Further, the *Zaldivar* court itself noted in a subsequent case that the standard for review of sanctions premised on bad faith and frivolousness is "abuse of discretion." *Mitchell v. Office of Los Angeles County Sup't of Schools*, 805 F.2d 844, 846 (9th Cir.1986) (citing *Jones v. Giles*, 741 F.2d 245, 250 (9th Cir.1984)).

## IV. THE SANCTION AGAINST RATHBUN

### A. Attorneys' Fees

■ The imposition of attorneys' fees against Rathbun must be reversed if only because she never had an adequate opportunity for a hearing on the record. *Roadway Express, supra*, 447 U.S. at 767, 100 S.Ct. at 2464. While briefs were filed on Rathbun's behalf, she was clearly abandoned by her attorneys at the hearing itself. This points out an inherent problem in a sanction hearing addressed to both a plaintiff and her attorneys, where the plaintiff and attorneys are not separately represented. *See Michigan Nat'l Bank v. Kroger Co.*, 619 F.Supp. 1149, 1162 (E.D. Mich.1985). In this case, although Rathbun's attorneys advanced no arguments for her at the hearing, at least their positions were essentially similar, to wit, that the litigation was factually justified. The attorneys did not attempt to blame plaintiff; instead, Lester graciously tried to accept all responsibility for any problems with the case. Thus, while we express no opinion

on the exact circumstances in which a party should be represented separately from her attorneys upon the consideration of sanctions, we nevertheless note that this is a problem to which district judges should be alert.

### 1. Bad Faith

Even if Rathbun had been represented at the sanction hearing, she simply cannot be sanctioned under the circumstances here for bad faith either in the filing of the case or its prosecution.

### a. Institution of the Action

■ Rathbun testified at trial about the use of derogatory language toward her based on her sex and national origin that she made known to her superiors and the school board. She described two attacks on her, one sexual. There was various testimony that Rathbun's superiors considered certain work that she was capable of doing "man's work." There was evidence that went toward the issue of retaliatory transfer, even if it was legally insufficient. While Rathbun's attorneys did not do a good job of presenting testimony from witnesses favorable to her, neither did the basis for her case rest entirely on her own testimony.

The school board defendants concede that the OCRC's finding of probable cause is some evidence justifying Rathbun's case, but they argue that the findings should be given little weight. *See Bowers v. Kraft Foods Corp.*, 606 F.2d 816, 818 (8th Cir. 1979). The district judge's sanction opinion did not even consider the fact that the OCRC had issued a probable cause finding against the school board that implicated some of the non-school board defendants.[6]

---

**6.** As to the school board defendants, the initial complaint as well as the amended complaints clearly established (contrary to the district judge's statements) that they were joined only in their representative capacity. Thus, it is not clear why they thought it necessary to retain separate counsel. The papers in the appendix are ambiguous on this point. The record reflects that Rathbun moved to default the individual board members in January of 1983. This could not have been the motivating factor behind their retaining separate counsel, however,

since they had already retained separate counsel by September of 1982, when the record suggests they were at risk only in their representative capacity. A motion could have resolved this ambiguity and, perhaps, avoided the need for two attorneys to represent defendants throughout this lengthy litigation. While there may, at times, be reasons why defendants do not make dispositive motions, *see Kroger, supra*, 619 F.Supp. at 1154, we can conceive of no legitimate reason why this particular issue was not addressed forthrightly early in the case.

The probable cause finding of the OCRC, though not dispositive, lends support for Rathbun's belief that she had a legal claim of discrimination and did not pursue her action in bad faith. *See Mitchell, supra,* 805 F.2d at 847 (reversing an award of attorneys' fees to defendants on grounds of bad faith and frivolousness following Rule 41(b) dismissal of Title VII action where EEOC had issued probable cause determination); *Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir. 1983) (upholding denial of an award of attorneys' fees to prevailing defendant in Title VII case where plaintiff put misplaced reliance on EEOC probable cause determination); *see also Bowers, supra* (reversing an award of attorneys' fees to defendants on grounds of frivolousness where EEOC had issued right-to-sue letter).

Rathbun was not completely unjustified in believing she was the subject of discrimination and a sexually harassing and abusive work environment. There is no evidence that Rathbun knew that the individual school board members (even assuming she did sue them in their individual capacity) could not be held liable for acts of discrimination, whether she informed them of the acts or not. *See Jones, supra* (abuse of discretion to award attorneys' fees under section 1988 or inherent power in race discrimination case in which employee failed to communicate alleged mistreatment to employer and joined individual defendants as "agents" of employer); *cf. Tarter, supra,* 742 F.2d at 987–88 (abuse of discretion to award attorneys' fees under section 1988 where only parts of plaintiff's case without merit). Combining the OCRC finding with Rathbun's testimony and her attorneys' advice, it was clearly erroneous to find that Rathbun brought her discrimination claim in bad faith. *See Haynie, supra,* 799 F.2d at 242.

### b. Conduct of the Litigation

■ As for possible bad faith by Rathbun in the *conduct* of the litigation, there is simply no evidence in the record suggesting that she acted in bad faith or contributed in any way to the manner in which this case was handled. If there was any fault

in this regard, it lay with the attorneys and she should not be penalized for their misdeeds, if any. *Cf. Shea, supra* (sins of attorneys should not be visited upon plaintiff where attendant costs to defendants can be remedied by assessing defendants' attorneys' fees against plaintiff's attorneys, especially where judge has not previously warned plaintiff of derelictions of her attorneys); *Carter v. City of Memphis, Tenn.,* 636 F.2d 159 (6th Cir.1980) (per curiam) (expressing same concept).

### 2. Frivolousness Under Christiansburg

The individual school board members point out that, as to them, there was no probable cause finding. Less weight may be given to Rathbun's reliance on an administrative finding of probable cause since she included in her action claims against defendants not considered by the OCRC. *See Badillo,* 717 F.2d at 1164.

The Supreme Court in *Christiansburg* illuminated the standard it announced with the following pertinent language:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

434 U.S. at 421-22, 98 S.Ct. at 700.

■ As discussed above, here there is no evidence that Rathbun was aware that the individual school board members—again,

assuming she sued them in their individual capacity, an assumption on which the district judge proceeded—could not be held legally responsible for conduct of her fellow employees. She had some foundation for believing that she had been discriminated against either on the basis of her sex or French origin. Combined with the advice of her original attorneys that she had a claim against the individual school board members and the subsequent encouragement by an attorney and law professor to pursue these claims further, Rathbun certainly had a sufficient basis for continuing her claims against the individual defendants. *See Badillo, supra*, 717 F.2d at 1165; *see also Smith, supra*, 754 F.2d at 185 (abuse of discretion to impose sanction under section 1988 in race discrimination case where couple had some reason to believe they had been discriminated against in housing). The adding of some meritless claims does not make the whole case frivolous. *See Haynie, supra*, 799 F.2d at 242; *Tarter, supra*, 742 F.2d at 987–88; *Badillo*, 717 F.2d at 1164. Under the circumstances, a sanction against Rathbun under the *Christiansburg* standard was improper.

### B. Costs

■ While the district judge had discretion not to tax costs against Rathbun, his doing so was not clearly an abuse of discretion since Rathbun's case lacked merit. *See Jones, supra*, 789 F.2d at 1233. However, under the circumstances, the issue of costs must be remanded for a determination of whether Rathbun is capable of paying the rather sizeable costs claimed by defendants (over $3,000). *See Badillo, supra*, 717 F.2d at 1165. For example, in *Hill v. BASF Wyandotte Corp.*, 547 F.Supp. 348, 355–56 (E.D.Mich.1982), the trial judge awarded $3,000 in attorney fees in an employment discrimination case, but there was evidence in that case showing plaintiff's income to be $24,610. *See also Piljan v. Michigan Dep't of Social Services*, 585 F.Supp. 1579, 1583 (E.D.Mich.1984) (awarding $3,000 in attorney fees as appropriate to deter frivolous Title VII claims). Ordinarily, while an assessment of *costs*

will not be reversed on the basis of indigency, district judges are encouraged to consider the question of indigency fully for the record. *Jones, id.* Although Rathbun raises the indigency issue for the first time on this appeal, because of the manner in which she was denied the opportunity to present her position at the hearing before the district judge, he should consider her indigency claim on remand. *See Haynie, supra*, 799 F.2d at 243 (remanding for indigency determination as to fees and costs).

## V. THE SANCTION AGAINST RUBEN

■ Since Rathbun's case was instituted and prosecuted by several attorneys before Ruben entered an appearance, he cannot be sanctioned for "bad faith in bringing an action or causing an action to be brought." *Shimman, supra*.

■ The probable cause finding of the OCRC also precludes a finding that Ruben *entered* the action in bad faith. While the district judge ultimately discredited Rathbun's testimony, this alone is not a sufficient basis for sanctioning her attorneys on grounds of bad faith where no evidence clearly contradicted their client's statements at the time the attorney undertook representation. *See Oliveri, supra*, 803 F.2d at 1277–78. To the contrary, Rathbun's statements were corroborated by the OCRC's finding that other evidence supported a discrimination action. Ruben, like Rathbun, was justified in relying on this fact.

The real issue is whether Ruben *continued* to pursue the case in bad faith after some discrete moment in its history. *See Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 700. A determination of whether the sanction against Ruben was appropriate depends, then, on the paper trail in the district court and the extent of Ruben's involvement in the alleged misconduct of Rathbun's attorneys. *See Shimman, supra*.

### A. Bad Faith in Continuing the Case Against the Individual Defendants

Soon after the case was filed, all defendants except Haas, Hudock, and Bernie Wil-

son[7] moved to dismiss for lack of subject matter jurisdiction on the ground that the complaint indicated on its face that Rathbun filed her action one day after the statutory ninety-day period. Rathbun subsequently amended the complaint twice, establishing that she filed within ninety days of receipt of the right-to-sue letter. The school board members later moved for summary judgment on the ground that they were not "employers" under Title VII and that the district court lacked jurisdiction over them because Rathbun failed to name them in the EEOC charge. These motions were denied in January of 1983. Bernie Wilson was subsequently dismissed because of his death. Defendants Pegues, Berarducci, and Nicholas Angelo also moved for summary judgment on the ground that they were not named in the EEOC charge. Pegues and Berarducci were granted summary judgment on this ground in June of 1984, twenty days before trial. Nicholas Angelo was mentioned in the EEOC charge and, thus, was not granted summary judgment.

Ruben argues that denial of the above motions precluded the district judge from later imposing a sanction, since the denials gave him reason to believe that the case had merit. *See Jones, supra,* 789 F.2d at 1231 n. 4 (suggesting sanction precluded where district court failed to grant individual employees' motion to dismiss on legal grounds). The school board members, however, continue to argue on appeal that there was no legal justification for naming them as defendants. They argue that under Ohio law they were not Rathbun's "employers" so as to create liability under Title VII. They also reassert that they were not named in the EEOC charge.

The denial of the motions for summary judgment precludes a sanction on the ground that the claims against them were *legally* insufficient. Where a complaint contains "glaring legal deficiencies," the deficiencies and any ambiguities can be so easily resolved by motion that it is not unduly burdensome to defend. *See Jones, supra,* 789 F.2d at 1231–32. A sanction is generally improper where a successful motion could have avoided any additional legal expenses by defendants. *Oliveri, supra,* 803 F.2d at 1280; *Obin, supra,* 651 F.2d at 588 & n. 15; *Browning, supra,* 560 F.2d at 1088. Such motions were filed and denied.[8] To the extent defendants now argue Rathbun included legally groundless claims of mental anguish, emotional distress, and medical treatment, their failure to promptly file a motion to dismiss these prayers for relief precludes a determination that Ruben acted in bad faith in joining the prosecution of the complaint as a whole.

Since none of the above motions was predicated on the underlying facts, the denial of the motions did not preclude the district judge from imposing sanctions if the case was *factually* frivolous. The order imposing sanctions makes it clear, in fact, that it was not the *legal* insufficiency of the complaint that led to the sanctions but the lack of *factual* support for the case. We have, however, already rejected a factual predicate for sanctioning Ruben.

## B. Bad Faith Misconduct in the Course of the Litigation

The only possible rationale for finding "bad faith" by Ruben lies in his conduct during the course of the litigation. The record shows that Ruben's involvement was more significant than he admits. Ru-

---

7. The record does not reflect any participation in the litigation by these three defendants until after Rathbun moved in January of 1983 for a default judgment against them. Their subsequent motions to file answers were granted.

8. This appeal does not address the correctness of the denial of defendants' motions, but only the imposition of the sanctions. (Three district judges presided over this case at various times. The bulk of the dispositive motions mentioned above were perfunctorily decided on two days in late January of 1983 by the second judge involved with the case, before the case was reassigned to the judge who presided over the trial and fee motions that are the subject of this appeal.) Thus, we must accept as correct the district court's refusal to dismiss most of the defendants on *legal* grounds. While Pegues and Berarducci were dismissed on legal grounds, the district judge's sanction opinion does not differentiate them from Rathbun's joining other individual defendants whose motions were denied.

ben revised a brief in opposition to a motion, and he attended a pretrial conference, a discovery meeting, Rathbun's deposition (the only one taken), and the opening day of trial. Although Ruben claims he served without compensation, in a telephone call to one of defendants' lawyers it was represented that Rathbun had retained Ruben at a rate of $150 an hour. Ruben wrote a letter to defendants' attorneys asking he be served with copies of all pleadings, although it appears that, with one exception, none was sent him. This involvement was not insignificant, especially considering the apparently minimal preparation put forth by Lester. We find reasonable the district judge's conclusion that, given the differing levels of experience between Lester and Ruben, Ruben played an influential role in the case.

■ In March of 1982, Lester sent to James Ries, the assistant city law director originally defending the case, a letter threatening a burdensome deposition schedule if defendants did not settle. The offer was refused, yet no one was deposed. (In fact, other than some interrogatories, Rathbun's attorneys conducted no discovery.) The district judge relied on this fact in levying the sanctions.[9] Ruben relies on Lester's assertion at the sanction hearing that Ries encouraged him (Lester) to file a settlement offer that compared the expected costs of litigation if the case went to trial. Ruben also argues that he was not involved in the sending of the threatening letter and that, in any case, there is no showing it in any way multiplied the proceedings or prejudiced defendants.

A second event also figuring prominently in the district judge's imposition of sanc-

tions was a motion filed by Weiner on Lester's behalf to disqualify defendants' attorneys on the mistaken grounds of conflict of interest.[10] A discrete sanction had already been levied against Weiner for the filing of the motion. Ruben argues that the motion was filed in a good faith mistaken belief of the facts. Second, he argues that, although the motion itself was not withdrawn, the motion was promptly "rectified" by Rathbun's reply brief on the motion, which removed the name of one of defendants' attorneys. Third, Ruben argues that there was, in fact, a conflict. This last argument is contradicted by Weiner's concession at the sanction hearing that there was no factual foundation for the motion. Fourth, despite evidence that Ruben participated in the filing of the motion, he argues that his input was minimal and strictly academic.

■ Many, if not most, of the problems that arose in the case are attributable to inadequate pretrial conduct by Rathbun's attorneys. Discovery by Rathbun was almost nil. Lester and Ruben failed to file a trial brief and list of exhibits and witnesses before trial.[11] On the first day of trial, they were granted leave to file their papers the following day, which they did. The district judge recited these facts as evidence of bad faith and the cause of additional expense to defendants, although he did not state specifically what effect the delay had on defendants. Ruben argues that there was no prejudice to defendants in the one-day delay in filing the trial materials.[12] In seeking to uphold the sanctions, defendants also point out that Lester and Ruben were late the first day of trial and

9. Combined with other "bad faith" tactics, a threat of numerous depositions may be the basis of a bad faith award against an attorney. *See Browning, supra,* 560 F.2d at 1089.

10. A groundless motion to disqualify opposing counsel may support a sanction under 28 U.S.C. § 1927. *See Wold v. Minerals Eng'g Co.,* 575 F.Supp. 166 (D.Colo.1983).

11. Proceeding to trial upon inadequate evidence may lead to a sanction under 28 U.S.C. § 1927. *See Lewis v. Brown & Root, Inc.,* 722 F.2d 209 (5th Cir.), *cert. denied,* 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984). However, while

an attorney may be sanctioned for not acquiring facts necessary to rebut his good faith belief that the case warranted prosecution, inadequate pretrial preparation by itself (contrary to the district judge's suggestion) cannot justify a conclusion that Ruben pursued the case in bad faith. *See Fisher v. Fashion Institute of Technology,* 491 F.Supp. 879, 890 (S.D.N.Y.1980).

12. As an attorney of record, Ruben could be held accountable for failure to take discovery or comply with pretrial orders. *See Jones, supra,* 789 F.2d at 1232; *Lipsig v. National Student Mktg. Corp.,* 663 F.2d 178 (D.C.Cir.1980). However, we think that the district judge's willing-

failed to have enough witnesses present on the third day of trial to occupy the day. Ruben also failed to appear at trial after the first day. The district judge recited this as further evidence of his unprofessionalism.[13] Ruben argues in response that he did not appear after the first day because his role was ancillary and there was no need for him to be there.

■ As we have noted, the basis for the district judge's sanction against Ruben is not clearly delineated. The district judge apparently sanctioned Ruben under his inherent powers, rather than 28 U.S.C. § 1927, because he considered the cumulative nature of the facts to constitute gross unprofessional conduct for an attorney of record. Ruben argues that because he did not control the litigation, it was improper to sanction him.[14] While Ruben's ancillary role could not entirely protect him, it would perhaps have been better for the district judge to advise him to either withdraw from the case or take over its management when it first became apparent that the case had severe problems.

That portion of the sanction attributable to Ruben's alleged misconduct must be reconsidered by the district judge with more exacting scrutiny. A district judge should not await the aggregation of what he considers multiple acts of misconduct and then levy an aggregated sanction without at least warning the attorneys at the time of each act or reserving decision upon timely requests by opposing counsel. Discrete acts of vexatious conduct should be identified and a determination made whether they were done in bad faith or, even if bad

faith was not present, whether they multiplied the proceedings pursuant to 28 U.S.C. § 1927. Because the district judge did not analyze the impact upon defendants of discrete acts of claimed misconduct, remand is necessary to allow the district judge to make such a determination. As the Court of Appeals for the Second Circuit noted in *Browning, supra:*

> [I]n an action not itself brought in bad faith, an award of attorneys' fees [against a plaintiff's attorney] should be limited to those expenses reasonably incurred to meet the other party's groundless, bad faith procedural moves. No attempt was made below to relate claimed expenses, costs, and fees to particular bad faith maneuvers. See *In re Boston & Providence R.R. Corp.,* 501 F.2d 545, 550 (1st Cir.1974). Accordingly, we remand for more specific findings as to those procedural motions or other actions undertaken in bad faith, without justification or for an improper purpose, such as harassment or delay, and as to the expenses, costs, and attorneys' fees reasonably incurred by the opposing party or parties in meeting such improper motions, actions, or delays.

560 F.2d at 1089.

The extent to which Ruben's misfeasance, if any, caused defendants to incur additional expenses should be explored on remand.[15] While we endorse the view that sanction proceedings should not be allowed to bloom into protracted satellite litigation, see *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1179 (D.C.Cir.1985); Advisory Committee Notes to 1983 Amendment to Rule

---

ness to accept the trial materials one day later, without imposing a sanction at the time, precluded him from later sanctioning Ruben for this delinquency. *Cf. Potlatch v. United States,* 679 F.2d 153 (9th Cir.1982) (district court abused discretion in excluding documentary and witness evidence because of late filing, where party complied as well as possible, no intent not to comply with court's deadline, no prejudice to opposing party, and court expressed willingness to generally extend discovery deadlines and accept late filing if certain condition satisfied); *Vac-Air. Inc. v. John Mohr & Sons, Inc.,* 471 F.2d 231 (7th Cir.1973) (while not condoning attorney's failures, including failure to timely answer interrogatories, court reversed sanction of default where interrogatories were answered shortly after due and attorney

had already paid fine for conduct that was partial basis for default).

**13.** While failure to appear for trial may, in a proper case, result in a sanction under 28 U.S.C. § 1927, *see In Re: Jaques, supra; see also Coston v. Detroit Edison Co.,* 789 F.2d 377 (6th Cir. 1986), nonappearance for a court proceeding does not appear to be punishable where co-counsel is present in lieu of the subject attorney. *See United States v. Delahanty,* 488 F.2d 396, 399–400 (6th Cir.1973).

**14.** *See Conley v. KFC Corp.,* 622 F.Supp. 767 (W.D.Ky.1985).

**15.** Ruben argues that the district judge improperly sanctioned him the same amount as Les-

11, 97 F.R.D. 198, 201 (1983), a district judge faced with a sanction motion must make certain findings in determining that an award is appropriate. Careful analysis and discrete findings are required, no matter how exasperating the case. The grounds for sanctions explored here are designed to improve the litigation process, but improvement cannot come at the expense of vigorous advocacy. District courts must strike a delicate balance between protecting the adversary system and not allowing attorneys to exploit the system for their own purposes.

For the foregoing reasons, we REVERSE the sanctions as to Rathbun and REMAND for proceedings not inconsistent with this opinion as to Rathbun's liability for defendants' costs and Ruben's liability under the district judge's inherent power or 28 U.S.C. § 1927. On remand, we contemplate that the district judge will require defendants' attorneys to amend their motions to identify the claimed misconduct by Ruben and the extra efforts required by them as a result. The district judge can then proceed to consider their motions anew.

ter—for every alleged act of misconduct from the inception of Rathbun's case—even though he (Ruben) did not join the litigation until much later. Ruben also argues that he never received an affidavit of hours from one of defendants' attorneys. We need not address these claims since, on remand, both defense attorneys will be required to file affidavits setting forth with specificity the time they incurred defending against claimed vexatious acts by Ruben only.