RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

FEMHEALTH USA, INC., dba carafem,

        *Plaintiff-Appellee*,

  *v.*

RICKEY NELSON WILLIAMS, JR. et al.,

        *Defendants*,

OPERATION SAVE AMERICA; JASON STORMS; MATTHEW BROCK; COLEMAN BOYD; FRANK LINAM; BRENT BUCKLEY,

        *Defendants-Appellants*.

> No. 22-5915

─────────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:22-cv-00565—William Lynn Campbell Jr., District Judge.

Argued: July 25, 2023

Decided and Filed: September 29, 2023

Before: MOORE, GIBBONS, and BUSH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Stephen M. Crampton, THOMAS MORE SOCIETY, Tupelo, Mississippi, for Appellants. Briana T. Sprick Schuster, BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Stephen M. Crampton, THOMAS MORE SOCIETY, Tupelo, Mississippi, Larry L. Crain, CRAIN LAW GROUP, PLLC, Brentwood, Tennessee, for Appellants. Briana T. Sprick Schuster, Sarah B. Miller, Angela L. Bergman, Allison Wiseman Aker, BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellee. Barbara A. Schwabauer, Erin H. Flynn, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

MOORE, J., delivered the opinion of the court in which GIBBONS, J., joined.  BUSH, J. (pp. 13–18), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  When this interlocutory appeal was initially briefed, the issue presented was whether the district court abused its discretion in granting a preliminary injunction under the Freedom of Access to Clinic Entrances Act (FACE Act), 18 U.S.C. § 248.  By the time we heard oral argument, however, that merits issue had been overtaken by a dispute over whether intervening events that occurred after the parties filed their merits briefs warranted modifying or dissolving the district court's preliminary injunction. Because that dispute raises new factual and legal issues that the district court is best positioned to resolve in the first instance, we **DISMISS** the appeal and **REMAND** for further proceedings. We separately **DENY** appellants' motion for attorney fees, expenses, and costs.

## I. BACKGROUND

FemHealth USA, Inc. is a reproductive health organization that does business under the name carafem.  R. 1 (Compl. ¶ 1) (Page ID #2).[1]  Carafem provides abortion care, birth control, and testing for sexually transmitted diseases through clinics spread across several states.  *Id.* Until recently, carafem operated one of its clinics in a medical office building—known as the Providence Pavilion—in Mt. Juliet, Tennessee, a Nashville suburb.  *Id.* ¶¶ 15–16 (Page ID #5).

On July 29, 2022, carafem filed this lawsuit under the FACE Act, which creates a private cause of action against "[w]hoever . . . by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services[.]" 18 U.S.C. § 248(a)(1), (c)(1).  Carafem's complaint named, among other defendants,

---

[1]The complaint identifies this as the first paragraph, but it is the third.

Operation Save America, Jason Storms, Matthew Brock, Coleman Boyd, Frank Linam, and Brent Buckley—whom we refer to as the OSA defendants.**2** R. 1 (Compl. ¶¶ 6–7, 9–12) (Page ID #3–4).

In its initial complaint, carafem alleged that three days earlier, on July 26, the OSA defendants approached the Providence Pavilion, "refused to move from the front doors and blocked [the] entrance and exit from the building for several minutes." *Id.* ¶¶ 17–19 (Page ID #5). According to carafem, the OSA defendants refused to leave until police officers ordered them to move to the sidewalk. *Id.* ¶¶ 22–23 (Page ID #6). Carafem claimed that the OSA defendants' refusal to move from the entrance prevented patients from entering the Providence Pavilion. *Id.* ¶ 22. Carafem further alleged that the OSA defendants told police officers "that they intended to return to the [Providence Pavilion] each day for the remainder of the week, planned to 'escalate' activities on Friday, July 29, 2022, and planned to 'fill the hallways' of the clinic 'sometime soon' and that they 'have men out here who are willing to do what needs to be done.'" *Id.* ¶ 24.

Carafem alleged that numerous OSA affiliates followed through on the promise to return to the Providence Pavilion. *Id.* ¶ 27 (Page ID #7). During an alleged incident on July 28, approximately 60 people associated with OSA arrived at the Providence Pavilion. *Id.* ¶ 29 (Page ID #7–8). Carafem does not allege that the OSA defendants were present on that date, but does assert that the group included several of the other defendants named in the complaint, including Rickey Williams, Bevelyn Williams, and Edmee Chavannes. *Id.* Rickey Williams, Bevelyn Williams, and Chavannes entered the Providence Pavilion and "attempted to enter [carafem's] clinic by ringing the front desk via an intercom system, pretending to seek services from the clinic." *Id.* ¶ 31 (Page ID #8). After being informed that they could not enter the clinic, Bevelyn Williams stated that "either they [are] gonna let us in or we take this whole building down. It's up to them." *Id.* ¶ 32. Based on these and other allegations made in the original complaint, carafem requested injunctive relief and money damages under the FACE Act. *Id.* ¶ 42 (Page ID #10–11).

---

**2**The other defendants are not parties to this appeal.

The same day that it filed its complaint, carafem moved for, and the district court granted, a temporary restraining order.  R. 2 (Mot. for TRO at 1–2) (Page ID #28–29); R. 9 (Dist. Ct. TRO Order at 1–4) (Page ID #75–78); R. 11 (Dist. Ct. Order Extending TRO at 1) (Page ID #80).  The following month, carafem moved for a preliminary injunction under the FACE Act, R. 13 (Mot. for PI at 1) (Page ID #84), and later filed an amended complaint supplementing its FACE Act claim with several Tennessee tort claims, R. 38 (Am. Compl. ¶¶ 46–66) (Page ID #236–39).

The district court held a hearing on carafem's preliminary-injunction motion in early September and granted the motion a few days later.  R. 66 (Dist. Ct. PI Order at 1–2) (Page ID #505–06).  The district court found that carafem "ha[d] shown a likelihood of proving at trial that the [OSA defendants] physically obstructed an entrance to carafem's facility with the intent to intimidate or interfere with persons who were obtaining or providing reproductive health services, and that they are likely to continue to do so in the absence of an injunction."  R. 65 (Dist. Ct. PI Op. at 8) (Page ID #504).  The district court preliminarily enjoined the OSA defendants from:

> a) physically obstructing, intentionally intimidating, or intentionally inter[fe]ring with (or attempting to do the same) any person because that person is or has been obtaining or providing reproductive health services from Plaintiff's facility; and
>
> b) entering on the property of Providence Pavilion at 5002 Crossings Circle, Mt. Juliet, TN 37122, the parking lot to that facility, and the entire area outlined in red in Exhibit A hereto during the hours of 6:00 a.m. to 7:00 p.m. Monday through Friday and 6:00 a.m. to 3:00 p.m. Saturday.

R. 66 (Dist. Ct. PI Order at 1) (Page ID #505).  The OSA defendants filed this timely interlocutory appeal.  R. 68 (Notice of Appeal at 1) (Page ID #511); *see* 28 U.S.C. § 1292(a)(1).

In June 2023, after the merits of this appeal were fully briefed, the OSA defendants moved this court to take judicial notice of carafem's public announcement that it was pausing all in-person services at its Mt. Juliet clinic due to Tennessee's abortion ban, which went into effect following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct.

2228 (2022).**³** The OSA defendants argued that the Mt. Juliet clinic's closure mooted the district court's preliminary injunction and asked us to dissolve the preliminary injunction and to vacate the district court's order. D. 39-1 (Appellants Mot. ¶ 15). The OSA defendants also asserted that carafem had been unreasonably slow to notify the OSA defendants and this court of the clinic's closure, and therefore moved for attorney fees, expenses, and costs under 28 U.S.C. § 1927, this court's inherent authority, and Federal Rule of Appellate Procedure 39. *Id.* ¶ 16.

Carafem opposed the OSA defendants' motion. Carafem argued that the OSA defendants' motion was procedurally improper and meritless. D. 42 (Appellee Resp. at 3–8). Carafem also explained that it had filed a motion to modify the preliminary injunction in the district court, and asked us to stay this appeal until the district court ruled on the motion to modify. *Id.* at 3, 9; *see* R. 114 (Carafem Mot. to Modify PI Order at 1) (Page ID #872). Carafem's proposed modification would eliminate the section (b) of the preliminary injunction, which prohibits the OSA defendants from entering the Providence Pavilion or the surrounding area, but would retain section (a), which prohibits the OSA defendants from physically obstructing, intentionally intimidating, or intentionally interfering with anyone because that person is or has been obtaining or providing reproductive health services at carafem's clinic. *Id.* at 3 (Page ID #874).

In the leadup to oral argument, the parties continued to litigate in the district court. After carafem moved the district court for an order modifying the preliminary injunction, the OSA defendants opposed the motion. R. 118 (OSA Defs. Opp. at 1–12) (Page ID #990–1001). AJ Hurley, a defendant below but not a party to this appeal, then filed a separate response opposing carafem's motion as well as a cross-motion to dissolve the preliminary injunction. R. 119 (Hurley Mot. at 1–2) (Page ID #1040–41). The district court has not acted on these recent filings.

---

**³**The OSA defendants characterize carafem's action as a "closure" of its Mt. Juliet clinic, D. 39-1 (Appellants Mot. ¶ 6), whereas carafem says that it has "paused" in-person services at the clinic, D. 42 (Appellee Resp. at 2). This distinction is immaterial to our decision, and we primarily refer to the "closure" of carafem's Mt. Juliet clinic for ease of readability. The record is not entirely clear on whether carafem continues to maintain an office or any legal interest in the Providence Pavilion, but there is no dispute that the organization no longer provides in-person reproductive health services to patients at the building or in Mt. Juliet, Tennessee more broadly. Carafem does represent, however, that it "continues to provide online medical care to its Tennessee-based patients." D. 42 (Appellee Resp. at 2).

We heard oral argument in July 2023.  The focus of the argument was not on whether the district court misinterpreted the factual record or the FACE Act when it granted the preliminary injunction.  Rather, the parties sparred over whether the closure of carafem's clinic necessitates modifying or dissolving the preliminary injunction.  The OSA defendants asked us to dissolve the preliminary injunction and vacate the district court's order granting the injunction.  Oral Arg. 1:07–13.  Carafem, meanwhile, stated that we should remand the case to the district court for it to rule on carafem's pending motion to modify the preliminary injunction.  *Id.* 14:04–12.

## II.  ANALYSIS

We resolve two issues in this opinion.  First, we determine which court—this court or the district court—should address in the first instance whether the recent closure of carafem's Mt. Juliet clinic requires modification or dissolution of the district court's preliminary injunction.  Second, we consider the OSA defendants' motion for attorney fees, expenses, and costs.

### A.  The Closure of Carafem's Mt. Juliet Clinic

When a court issues an injunction, it does so based on its assessment "of the circumstances that bear on the need for prospective relief."  *Salazar v. Buono*, 559 U.S. 700, 714 (2010) (plurality opinion).  Preliminary injunctions require courts to make that assessment at an early stage of the litigation so as "to maintain the *status quo* pending determination of an action on its merits."  *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 965 (6th Cir. 1976).  But as a case progresses, subsequent changes in the law or facts may "threaten to convert a previously proper injunction 'into an instrument of wrong[.]'"  *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (quotation marks omitted) (quoting *Buono*, 559 U.S. at 714–15).  For that reason, district courts retain the power to modify or dissolve preliminary injunctions to account for significant intervening changes in the law or facts, *id.*, and the courts of appeals have jurisdiction of appeals from district courts' exercise (or not) of that power, 28 U.S.C. § 1292(a)(1).

Here, the district court granted carafem's motion for a preliminary injunction based on its assessment of the facts that existed at that time.  The district court found that carafem had shown that the OSA defendants "physically obstructed an entrance to carafem's facility with the intent

to intimidate or interfere with persons who were obtaining or providing reproductive health services, and that [the OSA defendants] [we]re likely to continue to do so in the absence of an injunction." R. 65 (Dist. Ct. PI Op. at 8) (Page ID #504). Accordingly, the district court found that a preliminary injunction was appropriate to protect carafem's rights under the FACE Act. *Id.*

The OSA defendants appealed, claiming that the district court abused its discretion in granting the preliminary injunction. The OSA defendants challenged the district court's finding that they had interfered with any person's access to carafem's clinic within the meaning of the FACE Act. They argued that there was no evidence that they intended to return to the Providence Pavilion in the future. And they asserted that the district court's preliminary injunction was overbroad and burdened their protected speech. Carafem challenged each of the OSA defendants' arguments in its brief, and the OSA defendants continued to press their points on reply.

The merits issues raised and debated in the parties' briefs have since taken a back seat to the present dispute over how to address the fact that carafem no longer provides in-person reproductive health services at its Mt. Juliet clinic. All agree that this development means that it is not necessary to prohibit the OSA defendants from entering the Providence Pavilion or the area surrounding it in order to protect carafem's rights under the FACE Act. Indeed, carafem has asked the district court to eliminate the portion of the preliminary injunction imposing that prohibition. R. 114 (Carafem Mot. to Modify PI Order at 3) (Page ID #874). The parties take different views, by contrast, of what should be done with remainder of the preliminary injunction.

The parties' recent filings suggest that their dispute will require additional factfinding. Carafem argues that the closure of its clinic does not negate its need for the disputed portion of the preliminary injunction "because the people who have or had been obtaining and providing reproductive health services from carafem's Mt. Juliet location continue to reside in and around Mt. Juliet and are thus still at a significant risk of intimidation, and interference at the hands of Defendants." D. 42 (Appellee Resp. at 8). The OSA defendants have challenged carafem's claim, arguing in a district-court brief that it lacks a factual foundation. R. 118 (OSA Defs.

Resp. in Opp. to Mot. to Modify PI at 5–8) (Page ID #994–97).  Hurley, who is not a party to this appeal but is a defendant below, likewise argues in a separate district-court motion that carafem has "provide[d] no evidence to support [its] contention" and that "the 'factual' basis" for its argument "rests on Plaintiff's say-so."  R. 119 (Hurley Mot. at 4–5) (Page ID #1043–44).

The resolution of the parties' factual disputes may in turn require resolution of legal issues that were not raised below or addressed in the parties' briefs on appeal.  For example, the OSA defendants argue that a FACE Act injunction must be linked to a facility; thus, once carafem closed its Mt. Juliet clinic, the district court's entire preliminary injunction became moot.  D. 39-1 (Appellants Mot. ¶¶ 14–15); D. 45 (Appellants Reply at 6–7).  Carafem responds in a recent district court filing that the FACE Act protects not only reproductive health facilities but also the patients and medical providers who receive and provide reproductive health services at those facilities.  *See* R. 120 (Carafem Reply in Support of Mot. to Modify PI at 3) (Page ID #1051).  Because the district court issued its preliminary injunction when carafem's Mt. Juliet clinic was providing in-person reproductive services, that court has not addressed whether the clinic's closure alters the court's finding that carafem is likely to suffer irreparable harm absent a preliminary injunction and, if carafem is likely to suffer irreparable harm, whether that harm can support an injunction under the FACE Act.

Given that the dispute now before us arose after appellate briefing was completed and implicates unsettled facts and law that were not addressed by the district court below, we conclude that a remand to the district court is appropriate.  The district court is best positioned to resolve the parties' factual disputes.  *See Hadix v. Caruso*, 248 F. App'x 678, 681 (6th Cir. 2007) (per curiam) (remanding to the district court to assess argument that certain claims were moot where the argument was raised in briefs filed shortly before oral argument); 13C Charles Alan Wright et al., Federal Practice and Procedure § 3533.10.3, at 645 & n.31 (3d ed. 2008) (noting that "it is common to remand for consideration of mootness by the lower court" where "the appellate court is unsure of the facts").  The district court has full authority to modify or dissolve its preliminary injunction based on its assessment of the newly developed facts.  *Gooch*, 672 F.3d at 414–15.  And any future order entered by the district court modifying or dissolving, or declining to modify or dissolve, the preliminary injunction may be immediately appealed to this

court. *See* 28 U.S.C. § 1292(a)(1). If the case does return to us, our decision will benefit from a more complete factual record as well as appellate briefing on, and the district court's views of, the parties' legal arguments.

The OSA defendants object to this course of action, asserting that a remand is unwarranted because the district court's entire preliminary injunction is moot. The OSA defendants base this argument on their assertion that there is no evidence that they intend to return to the Providence Pavilion or interfere with any person who is obtaining or has obtained reproductive health services from carafem. Yet carafem contends that, contrary to the OSA defendants' assertion, its patients and medical providers are "still at a significant risk of intimidation, and interference at the hands of" the OSA defendants. D. 42 (Appellee Response at 8); *see also* R. 115 (Carafem Mem. in Support of Mot. to Modify PI at 4) (Page ID #880) (alleging other acts of intimidation and interference). For our part, we see no reason to wade into the parties' factual disputes before the district court has had a chance to make factual findings. Once the district court has done so, and if a further appeal is taken, we may then address the issue on the appropriate record.

The OSA defendants respond that further factfinding is unnecessary because we can hold as a matter of law that a FACE Act injunction cannot stand absent an open reproductive healthcare facility, which would make it irrelevant whether there is an ongoing likelihood of irreparable harm to carafem. To resolve this matter now would place us in the untenable position of issuing what would effectively be an advisory opinion on a novel legal dispute that has not been briefed and that is not presented in the district court decision from which this appeal was taken. *Cf. Hadix*, 248 F. App'x at 681 (remanding to the district court "[r]ather than attempting to address [a] moving target and rather than issuing rulings that time may make irrelevant"). If the district court finds that the preliminary injunction remains appropriate despite the clinic's closure for in-person reproductive services, the OSA defendants may appeal that decision and renew their argument in this court.

The OSA defendants further argue that a remand is unnecessary because the district court issued its preliminary injunction based on its assessment of the events that occurred at the Providence Pavilion on July 26, not any of the other events or factual allegations raised in

carafem's motion to modify the preliminary injunction or in its appellate briefing. This argument merely repackages the OSA defendants' earlier position on mootness. The suggestion appears to be that any events that occurred after July 26 may or may not support a different preliminary injunction, but they cannot be used to maintain the current one, so we should dissolve the current preliminary injunction and allow the district court to consider whether to grant a new one. Yet only by siding with the OSA defendants and holding that the closure of carafem's Mt. Juliet clinic for in-person reproductive services moots carafem's need for a preliminary injunction could we reasonably dissolve the current preliminary injunction. We decline to depart from our usual practice and intervene in that dramatic fashion before the district court addresses the parties' factual and legal disputes in the first instance. *See Hadix*, 248 F. App'x at 681 (adopting this approach); *see also Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 482 (6th Cir. 2002) (noting that the court previously "returned the case to the district court for a ruling on the motion to dissolve" the preliminary injunction).**⁴**

Lastly, the OSA defendants say that a remand will cause unnecessary delay and continue to place them at risk of running afoul of the district court's preliminary injunction. Given that carafem has moved the district court to eliminate the portion of its preliminary injunction barring the OSA defendants from entering the Providence Pavilion and the surrounding area, we expect that the district court will be able to address that portion of the preliminary injunction promptly on remand. We are also confident that the district court will address the parties' competing motions to modify or dissolve the remainder of the preliminary injunction without undue delay. We are therefore unpersuaded that a remand will harm the OSA defendants in any significant way, and we remand the case to the district court for further proceedings.

## B. The OSA Defendants' Motion for Attorney Fees, Costs, and Expenses

Parties may seek to recover attorney fees, costs, and expenses under several different sources of authority. The OSA defendants invoke three potential sources: 28 U.S.C. § 1927, this

---

**⁴**We note that the dissent focuses only on abortions and overlooks the fact that carafem is a reproductive health organization that provides a range of reproductive services including birth control and STD testing, for example. Moreover, although carafem paused in-person services at the Mt. Juliet clinic, the record is unclear whether carafem continues to use the facility for its online medical care. *See* n.3, *supra*. Clearly the district court is better situated to address such factual issues.

court's inherent authority, and Federal Rule of Appellate Procedure 39.**⁵**  Beyond merely citing our inherent authority and Rule 39, however, the OSA defendants do not address either in any depth.  We therefore focus on § 1927, which permits courts to award sanctions against an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously[.]"

"The purpose" of imposing sanctions under § 1927 "is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  Section 1927 imposes an objective standard of conduct and does not require a finding of bad faith before it authorizes a court to impose sanctions. *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006).  A litigant does not fall below that objective standard of conduct through "[s]imple inadvertence or negligence." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (quoting *Ruben v. Warren City Schs.*, 825 F.2d 977, 984 (6th Cir. 1987)).  Rather, "[t]here must be some conduct" that "falls short of the obligations owed by a member of the bar to the court *and which, as a result, causes additional expense to the opposing party*." *Id.* (emphasis added).

The OSA defendants argue that carafem should have notified this court sooner of its decision to stop providing services at its Mt. Juliet clinic, and that carafem's failure to do so led the OSA defendants to incur additional costs briefing their motion to take judicial notice.  Based on the documents available to us, it appears that carafem announced that it was pausing all in-person services at its Mt. Juliet clinic on June 1, 2023; counsel for the OSA defendants initiated a discussion with counsel for carafem concerning the pause on June 13; the OSA defendants filed their motion to take judicial notice in this court on June 20; and carafem filed its response on June 29.  *See* D. 39-5 (Emails Exchanged Between Counsel at 1–4); D. 42 (Appellee Resp. at 2–3).

---

**⁵**Rule 39 addresses costs and is not ordinarily cited by litigants seeking attorney fees and other sanctions. *See* Fed. R. App. P. 39.  The more common appellate rule cited in these circumstances is Rule 38, which authorizes courts of appeals to award just damages and costs based on the filing of a frivolous appeal.  *See* Fed. R. App. P. 38; *Hogan v. Jacobson*, 823 F.3d 872, 886 (6th Cir. 2016) (observing that Rule 38 and § 1927 "provide overlapping standards").  The OSA defendants' failure to explain how Rule 39 is relevant obviates any need to explore the issue further.

We are not persuaded that this timeline evidences unreasonable delay by carafem, but even if we were to agree that carafem should have alerted everyone to the closure of its Mt. Juliet clinic sooner, we would still deny the OSA defendants' motion. There is no evidence that carafem engaged in "dilatory litigation practices[,]" *Red Carpet Studios*, 465 F.3d at 646, that "multiplie[d] the proceedings" in this case, 28 U.S.C. § 1927. This is not a case in which one side pressed a concededly unmeritorious claim, causing the other to incur unnecessary expenses. *Cf. King v. Whitmer*, 71 F.4th 511, 530 (6th Cir. 2023) (affirming sanctions under § 1927 for this reason). To the contrary, there is no suggestion that the OSA defendants would not have filed the same motion to dissolve the district court's preliminary injunction, or that carafem would not have filed the same brief opposing that motion, had carafem disclosed its clinic's closure a few days or even weeks earlier. The OSA defendants therefore cannot show that any delay caused them to incur additional expenses, and we deny their motion for attorney fees, costs, and expenses.

## III. CONCLUSION

For the foregoing reasons, we **DENY** the OSA defendants' motion for attorney fees, costs, and expenses, **DISMISS** this appeal, and **REMAND** for further proceedings.

———————————————

**CONCURRENCE/DISSENT**

———————————————

JOHN K. BUSH, Circuit Judge, concurring in part and dissenting in part. I agree with my colleagues that the district court should reconsider whether and, if so, to what extent, a preliminary injunction is warranted for Plaintiff-Appellee FemHealth USA, Inc., d/b/a carafem. Where we disagree is on whether the existing preliminary injunction should remain in place while the district court reassesses. I don't believe that this injunction can survive based on the existing record and findings by the district court. I therefore respectfully dissent in part.

There is a simple reason why the preliminary injunction currently in place should be dissolved: abortions are no longer performed at the carafem clinic—a fact the parties don't dispute, as my colleagues acknowledge. Majority Op. at 5 n.3. That new development renders the injunction moot and therefore requires us to vacate the district court's order for the existing preliminary injunction.

"It has long been settled that a federal court has no authority 'to give opinions upon *moot questions* or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (emphasis added) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). We may not leave the injunction undisturbed as a placeholder, as my colleagues appear to do, while the district court hears carafem's arguments for different equitable interim relief. To do so exceeds our circumscribed judicial power under the Constitution. The mootness of the preliminary injunction "makes it impossible for the court to grant any effectual relief"; accordingly, we must vacate the injunction rather than allow what has become an advisory opinion to stand. *Fleming v. Gutierrez*, 785 F.3d 442, 445 (10th Cir. 2015); *see also Resurrection School v. Hertel*, 35 F.4th 524, 528–30 (6th Cir. 2022) (en banc).

To understand why the preliminary injunction is moot, consider the underlying relevant facts. On July 26, 2022, Operation Save America (OSA) and other defendants gathered at Providence Pavilion, where carafem was located, to celebrate *Dobbs v. Jackson Women's Health*

*Organization*, 142 S. Ct. 2228 (2022), which had been decided 30 days earlier. *Dobbs*, of course, overturned *Roe v. Wade*, 410 U.S. 113 (1973). Defendants apparently thought that Tennessee's Human Life Protection Act, Tenn. Code § 39-15-213, had gone into effect that day. This statute, known as the "Tennessee trigger law," criminalizes abortion in all but exceptional circumstances. *See id.* By its terms, though, the abortion prohibition did not become effective until 30 days after "[t]he issuance of the judgment in any decision of the United States Supreme Court which overrules, in whole or in part, *Roe v. Wade*, 410 U.S. 113 (1983), as modified by *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), thereby restoring to the states their authority to prohibit abortion." 2019 Tenn. Pub. Ch. 351 (S.B. 1257), at Sec. 3(a)(1). It seems that defendants mistakenly believed that the Tennessee trigger law would go into effect on July 26, 2022, or 30 days after issuance of the *Dobbs* opinion. In fact, the trigger date was based not on the day the Supreme Court issued its opinion, but rather on the day it issued its judgment. The Court did not issue its judgment in *Dobbs* until July 26, so the Tennessee abortion prohibition didn't ripen until 30 days after that, on August 25, 2022.

Defendants' confusion as to the effective date of the Tennessee trigger law contributed to an escalation at the carafem clinic that gave rise to the preliminary injunction. On July 26, 2022, the OSA defendants went to the Providence Pavilion apparently believing that the Tennessee abortion law had gone into effect. When it became clear that abortions were still being performed at the facility, defendants were outraged at what they considered carafem's blatant defiance of a binding Supreme Court decision and an applicable Tennessee law. However, the protestors soon learned that carafem was acting well within its rights. About an hour after the events in question, the Supreme Court issued its judgment in *Dobbs* and the Attorney General of Tennessee issued a public statement saying that the trigger ban would not go into effect until August 25.

But that did not end the matter. Even after the trigger date was clarified, OSA supporters continued to protest at the facility. According to carafem, the clinic had to go into lockdown, and some of its patients either had their visits delayed or they had to reschedule or cancel appointments. And based on one patient's declaration, she had to be escorted into the clinic from a different office in the building because she feared for her safety.

On July 29, carafem obtained a temporary restraining order.  After full briefing and an extensive evidentiary hearing, the district court issued a preliminary injunction on September 14, 2022.  The district court found that carafem satisfied the factors for injunctive relief, including that it is likely to succeed on the merits of its claim brought under 18 U.S.C. § 248.

That statute bears the heading "Freedom of access to clinic entrances" in the United States Code, and it is often referred to as the "Freedom of Access to Clinic Entrances Act," or the "FACE Act."  18 U.S.C. § 248.  But the FACE Act deals with more than just access to clinic entrances.  For example, it also gives certain protections for "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," *id.* at § 248(a)(2), and it imposes penalties for the intentional damage or destruction of not only "the property of a facility" but also "the property of a place of religious worship," *id.* § 248(a)(3).

The repeated references to "property" in the statute—whether at clinics or at places of religious worship—make clear that its provisions are focused, at least in part, on providing protection for people while they are at certain statutorily protected places.  And the district court's factual findings in support of the preliminary injunction all addressed alleged violations that occurred at the particular protected property at issue—the carafem clinic—and nowhere else.  Indeed, in the district court's own words, the injunction does "*not* restrict any of the rights of the Defendants, including their First Amendment rights, *outside the property* of the Providence Pavillion [sic] where carafem's office is located or outside a two-hour window of carafem's hours of operation (two hours before opening to two hours after closing)."  R. 65, PageID 504 (emphasis added).  The injunction and the factual findings made in support thereof thus carefully circumscribed the relief in two ways:  they limited it to (1) the location of the carafem clinic, and (2) the timeframe within which abortions were performed at the facility each day.

In light of those parameters, the existing preliminary injunction is moot with the cessation of abortion care at the clinic.  Because carafem no longer performs abortions, there is no longer any abortion provider who is "providing or seeking to provide services in [the] facility," nor is there any patient "obtaining or seeking to obtain" abortion "services in [the] facility."  18 U.S.C. § 248(c)(1)(A).  And OSA isn't protesting at carafem anymore now that abortions are no longer

provided there.  Indeed, even carafem acknowledges in its opposition to the motion for judicial notice "that there is not currently an ongoing likelihood of irreparable harm to occur at the" clinic.  Carafem Resp. at 8.

The majority claims, however, that because carafem may still be providing other reproductive services, such as birth control and STD testing, the preliminary injunction should remain in place.  Majority Op. at 12 n.4.  But the majority seems to overlook the fact that the reason for the protests was in-person abortion care, not other reproductive services like birth control or STD testing.  And the majority and the parties all agree that in-person abortion care is no longer provided at the carafem clinic.  That fact renders this preliminary injunction moot.

As the Supreme Court has explained, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  Because the preliminary injunction is no longer needed to maintain the status quo—that is, it has no practical effect—it must be dissolved.  *See Resurrection School*, 35 F.4th at 528–30 ("Whether a preliminary-injunction appeal is moot . . . depends on whether our decision would have any 'practical effect' during that window of time.").

Carafem argues that it still may be entitled to injunctive relief because of the potential for violations of 18 U.S.C. § 248 in places other than carafem's Mt. Juliet clinic.  But there is nothing in the factual record so far that shows any threats or violence against anyone outside of the vicinity of that clinic.  Moreover, there is a threshold legal question that must be addressed as to whether the statute even covers activities beyond statutorily-protected properties.

The preliminary injunction before us obviously does not address those issues.  While I agree with the majority that the district court retains the authority to consider these questions in determining whether other injunctive relief is appropriate, that doesn't divest this court of its duty to vacate the existing injunction when the factual basis for it has become moot.  *See, e.g.*, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23 (1994) (explaining that vacatur "must be granted where mootness results from the unilateral action of the party who prevailed in the lower court").

We have jurisdiction to consider the preliminary injunction because the defendants have "[a]n appeal of right under [28 U.S.C.] § 1292(a)(1)" for an "order granting or denying injunctive relief." *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (alterations in original) (quoting *Cherokee Express, Inc. v. Cherokee Express, Inc.*, 924 F.2d 603, 606 (6th Cir. 1991)).  And in exercising our jurisdiction over the injunction, we "must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an 'instrument of wrong.' " *Salazar v. Buono*, 559 U.S. 700, 714–15 (2010) (quoting 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2961, pp. 393–94 (2d ed. 1995)); *see also Gooch*, 672 F.3d at 414–15.  Here, it is wrong to leave the preliminary injunction in place given the significant change in factual circumstances.

The majority sees things differently.  But I respectfully submit that my colleagues can leave the injunction in place only by ignoring its limited scope.  To overcome the injunction's physical and temporal limitations, carafem persuades the majority to entertain a misconstruction of the existing preliminary injunction that apparently would enjoin defendants from interacting with any of carafem's providers and former abortion patients wherever they may be and whenever that interaction might occur.  The scope of the existing injunction cannot support this new interpretation.  The revised construction also may violate 18 U.S.C. § 248 by proscribing activities in areas beyond the explicitly referenced properties in the statute.

For good reason there are well-established requirements that a party must meet to obtain a preliminary injunction.  These, of course, relate to likelihood of success on the merits, irreparable harm, balance of harms, and the public interest.  *See Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022).  The movant must clear those hurdles because people generally are allowed to live their lives—including expressing views on political issues like abortion—without regulation by court order.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").  Although a preliminary injunction exists to achieve an ostensibly benign objective—to maintain the status quo—it can be quite coercive.  A preliminary injunction tells the enjoined party what that party can and cannot do while the case remains pending.  *See id.* at 24–26.  And, as the district court rightly acknowledged by limiting the scope of the preliminary

injunction, such equitable relief must be narrowly tailored when free speech is involved in order to avoid turning the injunction into a weapon that violates the First Amendment. *FemHealth USA, Inc. v. Williams*, No. 3:22-CV-00565, 2022 WL 4241269, at *5 (M.D. Tenn. Sept. 14, 2022). All of these considerations reinforce the requirement that we vacate a preliminary injunction that, by its explicit terms, has outlived its practical effect, lest it be abused to stifle lawful conduct and chill freedom of expression.

Therefore, while I join the majority's decision to deny the OSA defendants' motion for attorney fees, costs, and expenses, I respectfully dissent from the majority's decision to maintain the existing preliminary injunction while the case proceeds in the district court. The injunction must be dissolved because the key circumstance that gave rise to it—the performance of abortions at carafem—is now moot.